LOCAL 1219, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS *v.* CONNECTICUT LABOR RELATIONS BOARD

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, JS.

Argued May 6—decision released August 3, 1976

*Norman Zolot,* with whom was *Burton S. Rosenberg,* for the appellant (plaintiff).

*Thomas J. Daley,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Donald E. Wasik,* assistant attorney general, for the appellee (defendant).

LOISELLE, J. On May 3, 1973, the plaintiff, Local 1219, International Association of Fire Fighters, filed a complaint with the defendant board pursuant to General Statutes § 7-471 (4)[1] alleging that the borough of Naugatuck had engaged in and

[1] "[General Statutes] Sec. 7-471. POWERS OF STATE BOARD OF LABOR RELATIONS. The state board of labor relations shall have the following power and authority in relation to collective bargaining in municipal employment: . . . (4) Whenever a question arises as to whether a practice prohibited by sections 7-467 to 7-477, inclusive, has been committed by a municipal employer or employee organization, the board shall consider that question . . . : (B) If, upon all the testimony, the board determines that a prohibited practice has been or is being committed, it shall state its findings of fact and

was engaging in practices prohibited by § 7-470 in that the borough had refused to bargain in good faith because the borough "unilaterally withheld the benefit of premium pay for overtime and other substantial benefits which benefits were provided for in the contract by virtue of a final and binding decision of the [Connecticut] State Board of Mediation and Arbitration Case 7273-A-72." After hearings, the defendant issued a decision on June 5, 1974, in which it dismissed the complaint. The plaintiff appealed to the Court of Common Pleas pursuant to § 4-183. The court rendered a judgment of dismissal and the plaintiff has appealed to this court. See General Statutes §§ 4-184 and 52-6a.

The facts are not in dispute. The defendant board found that, on April 1, 1971, the borough, a municipal employer under § 7-467 (1), and the plaintiff, an employee organization under § 7-467 (3), entered into a collective bargaining agreement for a three-year term.[2] One part of the agreement, referred to as the parity clause, states: "It is understood and

shall issue and cause to be served on the party committing the prohibited practice an order requiring it or him to cease and desist from such prohibited practice, and shall take such further affirmative action as will effectuate the policies of sections 7-467 to 7-477, inclusive . . . . (C) If, upon all of the testimony, the board determines that a prohibited practice has not been or is not being committed, it shall state its finding of fact and shall issue an order dismissing the complaint. . . ."

[2] "[General Statutes] Sec. 7-467. COLLECTIVE BARGAINING. DEFINITIONS. When used in sections 7-467 to 7-477, inclusive: (1) 'Municipal employer' means any political subdivision of the state, including any town, city, borough, district, district department of health, school board, housing authority or other authority established by law, and any person or persons designated by the municipal employer to act in its interest in dealing with municipal employees; . . . (3) 'employee organization' means any lawful association, labor organization, federation or council having as a primary purpose the improvement of wages, hours and other conditions of employment among employees of municipal employers."

agreed that if the borough grants to the police department any additional yearly wage, sick leave, number of holidays, vacations, funeral leave or hospital, surgical or life insurance, or other benefits over and above the terms of this contract and during its term, the employees in this bargaining unit will be granted the same additional benefits, effective the first of the month following the granting of such benefits to the police department." Another part of the agreement said that the borough would pay employees at the same hourly rate for overtime work as they were paid for regularly assigned duty.

On or about April 1, 1972, the borough entered into a collective bargaining agreement with Local 325, International Brotherhood of Police Officers, the bargaining representative for employees of the borough's police department. In contrast to the provisions for overtime pay for the plaintiff's members, the police agreement provided: "If an employee works after eight (8) hours in any one day, or over forty (40) hours in any one week, but not both, he shall be paid at the rate of regular time plus one half for each hour of overtime worked. If an employee works as much as 12 hours in a day, he shall be paid double time for work in excess of 12 hours." The borough, however, did not apply these overtime terms to the plaintiff's members. It continued paying fire fighters the same hourly rate for all work. The plaintiff protested this practice through the agreement's grievance procedure and presented it to the state board of mediation and arbitration on November 16, 1972. On January 8, 1973, the board of mediation and arbitration determined that the borough was in violation of the parity clause of the collective bar-

gaining agreement and ordered the borough to pay the plaintiff's members time and a half for overtime work, retroactive to May 2, 1972. The borough began paying for overtime work in accordance with the award.

On April 10, 1973, the defendant board filed decision number 1128, *In re City of New London and New London Police Union Local #724 and International Association of Fire Fighters Local Union #1522,* case number MPP-2268, and *In re Local 1522, International Association of Fire Fighters and New London Police Union Local #724,* case number MUPP-2343, both cases referred to in this opinion as *City of New London,* holding that the enforcement of a parity clause similar to the one here involved constituted a violation of the Municipal Employee Relations Act (General Statutes §§ 7-467 through 7-477), referred to in this opinion as the act, and that such clause was void. On April 17, 1973, the borough's attorney issued a legal opinion stating that the parity clause was void and that compliance with it would constitute a practice prohibited by the act. The borough has thereafter refused to pay members of the plaintiff time and a half for overtime work. On October 23, 1973, the Court of Common Pleas upheld the defendant's decision in *City of New London* and there has been no further appeal from that decision. *Local Union No. 1522, International Association of Fire Fighters v. Connecticut State Board of Labor Relations,* 31 Conn. Sup. 15, 319 A.2d 511.

In its decision in the present case the defendant reached the following conclusions of law: "1. The parity clause in the present case is void and unenforceable under the reasoning in the *New London* case from and after April 10, 1973. 2. The award of

the State Board of Mediation and Arbitration became binding on the parties hereto by operation of the principle of res judicata. 3. The res judicata effect of such award did not survive the *New London* decision which so changed the legal atmosphere that an application of res judicata would result in inequity in the administration of the Act."

The trial court, acting under the Uniform Administrative Procedure Act (General Statutes §§ 4-166 through 4-189), found that the plaintiff was aggrieved by the defendant's order within the meaning of § 4-183 (a) and that the proceedings below constituted a "contested case" as defined by § 4-166 (2). The court further found that the decision of the state board of mediation and arbitration relating to overtime pay and the parity clause was not res judicata on the question of the validity of the parity clause, and that the borough did not repudiate its collective bargaining agreement when it refused to honor the parity clause contained therein.[3]

The plaintiff now claims that the trial court erred by failing to hold that the defendant board violated provisions of the General Statutes, exercised

---

[3] The applicable standard of review for the trial court is given by General Statutes § 4-183 (g):

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

its discretion in an arbitrary and unwarranted manner, abused its discretion, and rendered a decision based on an error of law when the defendant board failed to hold the borough in violation of § 7-470 (a) (4). Although the plaintiff makes several assertions in support of this claim, the main issue is whether the defendant board's decision in *City of New London* and its application to the present case is "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 4-183 (g) (6).

General Statutes § 7-468 (a) provides that municipal employees shall have the right "to bargain collectively . . . on questions of wages, hours and other conditions of employment . . . free from . . . interference, restraint or coercion." Municipal employers are prohibited by § 7-470 (a) (1) from interfering, restraining or coercing employees in the exercise of those rights guaranteed in § 7-468 (a). Employee organizations or their agents are similarly prohibited, under § 7-470 (b) (1) (A), from restraining or coercing employees in the exercise of their rights. In *City of New London* the fire fighters union had negotiated a collective bargaining agreement with the city of New London that contained the following provision: "Any increase in wages which is granted to any employee of the Police Department, which is greater than that received by any employee of this Bargaining Unit who has the same relative length of service in a comparable rank to that held by such Police Department employee, shall be simultaneously granted and effective for such Bargaining Unit employee, and shall be in addition to the provisions of this agreement." The defendant board concluded

that the mere presence and necessary operation of the clause would inevitably interfere with, restrain and coerce the police union in future negotiations with the city of New London and that the act of agreement upon such clause constituted a violation of § 7-470 (a) (1) by the city and § 7-470 (b) (1) (A) by the fire fighters union. Elaborating upon its conclusion, the defendant said: "What we find to be forbidden is an agreement between *one* group (e.g., firemen) and the employer that will impose equality for the future *upon another group* (e.g., policemen) that, has had no part in making the agreement. We find that the *inevitable* tendency of such an agreement is to interfere with, restrain and coerce the right of the later group to have untrammeled bargaining. And this affects *all* the later negotiations (within the scope of the parity clause) even though it may be hard or impossible to trace by proof the effect of the parity clause upon any specific terms of the later contract (just as in the case before us). The parity clause will seldom surface in the later negotiations but it will surely be present in the minds of the negotiators and have a restraining or coercive effect not always consciously realized." The defendant also made it clear that it was not deciding that parity between policemen and firemen was forbidden by the act, or that the existence of a parity clause in and of itself was unlawful, or that the police and fire units could not agree upon, or bargain jointly for, equal benefits.

The conclusions of the defendant board in *City of New London* are not based on caprice or whim. There are good reasons for its actions. The defendant's inferences were those that could have reasonably been drawn from the evidence, given the rule

that the "agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence." General Statutes, § 4-178.

It is also to be noted that the legislature, by § 7-471 (3), has required that the employees of municipal fire and police departments be in separate collective bargaining units.[4] The parity clause is between one group, the plaintiff, and the borough, and will impose equality for the future upon another group, the police, which has had no part in making the agreement. On this issue, the police union's right to bargain has been completely taken from it. By voiding parity clauses in circumstances similar to those found in the present case, the defendant board preserves the wall of separation mandated by the statute. The defendant's action will also ensure that the units will be allowed to tie themselves to a rule of equality only if each unit agrees with the other that their interests are the same.

In the present case, the defendant board was faced with a similar parity clause and with the fact that the firemen had bargained with the borough for the parity clause without the agreement of the

---

[4] "[General Statutes] Sec. 7-471. POWERS OF STATE BOARD OF LABOR RELATIONS. The state board of labor relations shall have the following power and authority in relation to collective bargaining in municipal employment: . . . (3) The board shall decide in each case whether, in order to insure to employees the fullest freedom in exercising the rights guaranteed by sections 7-467 to 7-477, inclusive, and in order to insure a clear and identifiable community of interest among employees concerned, the unit appropriate for purposes of collective bargaining shall be the municipal employer unit or any other unit thereof, provided there shall be a single unit for each fire department consisting of the uniformed and investigatory employees of each such fire department and a single unit for each police department consisting of the uniformed and investigatory employees of each such police department . . . ."

police. Given the inevitability that the defendant board found in the nature of the effect of the clause and the impossibility of detecting its true influence, the defendant's application of *City of New London* to the present case was not arbitrary. The trial court was not in error in concluding that the defendant board had not erred by determining that the rule in *City of New London* applied and that the parity clause in the present case violated the act.

The plaintiff also asserts that the defendant's decision was an arbitrary and unwarranted reversal of existing board law. The plaintiff cites several of the defendant board's decisions for the proposition that, prior to the present case, it was established board law that it was a violation of § 7-470 (a) (4) and § 7-470 (c) for an employer unilaterally to change employment conditions while the parties were negotiating the terms of an agreement. See *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 596–601, 295 A.2d 526. Assuming that the plaintiff's statement of the rule of previous board decisions is correct and assuming that the rule would apply to the present situation, nothing in the present decision qualifies as a reversal of the rule. The borough's action in stopping premium pay avoided committing a prohibited practice under the act. The prohibitions of the act may not be varied by the contracts of private parties. See *Panaroni* v. *Johnson,* 158 Conn. 92, 104, 256 A.2d 246.

The plaintiff also claims that both the present case and *City of New London* should be overturned because they are contrary to analogous federal labor law cases and erroneous as a matter of law under the act. The plaintiff's argument is that the act requires the municipal employer and the

employee organization to bargain collectively in good faith. Part of the requirement to bargain collectively is to confer in good faith with respect to wages, hours and other conditions of employment. § 7-470 (c). A parity clause, the argument continues, falls within the area of wages, hours and other conditions of employment. The conclusion, then, is that the parity clause is a subject required by the act to be bargained over, and is proper and legally enforceable. This argument omits another duty found in the same statute (§ 7-470) that creates the duty to bargain: the duty of both a municipal employer and an employee organization to refrain from interfering, coercing or restraining the § 7-468 (a) rights of all employees. Suffice it to say that the duty to bargain does not make legal those clauses which, if found in the contract, would constitute practices prohibited by the act.

The plaintiff argues with equal vigor that the trial court erred in failing to hold that the defendant board violated provisions of the General Statutes, exercised its discretion in an arbitrary and clearly unwarranted manner, abused its discretion, and rendered a decision based upon an error of law when the defendant board held an award of the Connecticut state board of mediation and arbitration void and unenforceable. The first assertion in support of this claim is that the defendant board had no authority to void the application of an arbitration award rendered by the Connecticut state board of mediation and arbitration.[5]

---

[5] "[General Statutes] Sec. 7-472. MEDIATION BY STATE BOARD OF MEDIATION AND ARBITRATION. (a) The services of the state board of mediation and arbitration shall be available to municipal employers and employee organizations . . . for purposes of arbitration of disputes over the interpretation or application of the terms of a written agreement . . . ."

In *L. Suzio Construction Co.* v. *Connecticut State Board of Labor Relations,* 148 Conn. 135, 168 A.2d 553, it was held that the defendant board was not barred from consideration of claims of unfair labor practices because of the action of the state board of mediation and arbitration. The court stated (pp. 144-45) that the question submitted for arbitration "had reference only to the violation of the contract. It did not involve the determination whether the action of the plaintiff constituted unfair labor practices within the meaning of our Labor Relations Act [General Statutes c. 561]. The award of the state board of mediation and arbitration was not a bar to the inquiry made by the defendant. *New Britain Machine Co.* v. *Lodge 1021,* 143 Conn. 399, 404, 122 A.2d 786; *American Brass Co.* v. *Torrington Brass Workers' Union,* 141 Conn. 514, 521, 107 A.2d 255."

The plaintiff does not dispute the holding in *L. Suzio Construction Co.* v. *Connecticut State Board of Labor Relations,* supra, that each board has its field of operation, but claims that that case was not authority for the proposition that one board could override a decision of another in the latter's field of operation, as the plaintiff claims was done by the defendant in this case.

General principles of arbitration make it clear that arbitrators are concerned with the contract and not with statutes. A submission of issues to arbitration constitutes "the charter of the entire arbitration proceedings and defines and limits the issues to be decided by the arbitrators." *Gores* v. *Rosenthal,* 150 Conn. 554, 557, 192 A.2d 210. If, as is the case in the arbitration proceedings before us, the contract does not require the arbitra-

tors to apply legal standards, "arbitrators are not required to decide according to law." *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 595, 96 A.2d 209. In the award by the arbitrator in this case, he was concerned only with the interpretation of the parity clause and its application to a particular grievance, and this endeavor was "not a matter of law but rather is a matter for the arbitrator to decide in a final and binding way." It is unquestioned that the submission to the arbitrator was restricted to an interpretation of the contract involving the parity clause without regard to the law and it is also unquestioned that the issue before the defendant was limited to whether there was a statutory violation; therefore, each board operated in its own field. The interpretation given the contract remains; its enforcement, however, would constitute an unfair labor practice. The defendant board has the authority to determine whether practices prohibited by the act have been, or are being, committed. General Statutes § 7-471 (4).

The plaintiff also claims that the court erred in concluding that the award of the arbitrator is not res judicata on the issue of the validity of the parity clause. "To prevent a multiplicity of actions, equity will enjoin further litigation of a cause of action which has already been adjudicated." *Corey* v. *Avco-Lycoming Div., Avco Corporation,* 163 Conn. 309, 316–17, 307 A.2d 155, cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699. If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or might have been made. *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 196, 91 A.2d 778; 46 Am.

Jur. 2d, Judgments, § 394. And with regard to an arbitration award, it is res judicata as to all matters in the submission. *Corey* v. *Avco-Lycoming Div., Avco Corporation,* supra, 319–20. The arbitrator was limited by the submission which did not include the issue of the validity of the parity clause. This being so, there is no identity of issues and the doctrine of res judicata did not bar the defendant from its determination of the unfair labor practice.

Further, res judicata does not necessarily apply to administrative agencies where the situation is virtually altered between the time of the first judgment or order and the time of the second. The defendant in its discussion relied on *Commissioner of Internal Revenue* v. *Sunnen,* 333 U.S. 591, 600, 68 S. Ct. 715, 92 L. Ed. 898, wherein it was stated that "a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." Although that case involved the doctrine of collateral estoppel, the same principle would apply to the doctrine of res judicata. The plaintiff claims that the defendant's decision in *City of New London* and its subsequent affirmance was not a change in the legal atmosphere. If this court were to adopt the plaintiff's assertion, the parity provision in *City of New London* would be void and unenforceable, while the parity clause in the present case would remain in full force and effect. Such a disparity in results is not equitable. The defendant's decision in *City of New London* had state-wide force. It represents a significant change in the legal atmosphere of municipal labor relations.

There is no error.

In this opinion the other judges concurred.