**ASSOCIATED CONSTRUCTION COMPANY, et al.**

v.

**CAMP, DRESSER & McKEE, INC.**

**Civ. No. N–83–302 (PCD).**

United States District Court,
D. Connecticut.

Nov. 14, 1986.

Matthew J. Brady, The Marcus Law Firm, New Haven, Conn., for plaintiffs.

William Doyle, Jeremy G. Zimmerman, Wiggin & Dana, New Haven, Conn., for defendant.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiffs seek compensatory and punitive damages based on defendant's claimed failure to act with reasonable care or in accordance with its contract with the City of New Haven ("City") and, based on the same alleged deficiencies, for willful, intentional conduct. Plaintiffs, Associated Construction Company and DeMatteo Construction Company, formed a joint venture (the "JV") to be the general contractor for a New Haven Sewer Treatment Facility (the "Project"). Three subcontractors, Instrumentation Contractors, Inc. ("ICI"), Holzner Electric Company ("Holzner") and Cosgrove Construction Company ("Cosgrove"), are the remaining plaintiffs. Defendant, Camp, Dresser & McKee, Inc. ("CDM"), an engineering company, produced the plans and specifications for the Project and supervised the construction for the City. Defendant's conduct claimed by plaintiffs to be wrongful, arises out of the contract—various preparatory surveying work, planning, design, drafting, information, inspection, testing, drawing review, and approval, coordination, progress certification, supervision, reporting obligations and processing claims for extra work. Plaintiffs claim economic losses suffered in their performance of the contract, allegedly caused by defendant's wrongful conduct.

Though plaintiffs ahve not defined the issues with ideal meticulousness, the following seems to be undisputed:

(1) Cosgrove's claims here (as compared to those made against the City), having been partially settled (Exhibit 54) or not previously totally claimed, are based on the same facts as the claims presented to the City. Plaintiffs' Statement of Facts at ¶ 9.

(2) Holzner's claims here (as compared to those made against the City which were paid in whole or in part as arbitration awards or a stipulation and which were claimed for only part of the entire period) were not previously specifically claimed as items of damage, though they are based on the same facts as the items which were claimed or were claimed without an award being made. *Id.* at ¶ 28.

(3) ICI's claims here (as compared to those made against the City which were paid in whole or in part as arbitration awards or a stipulation—although ICI was not a party to the arbitration, its claims were presented by the JV as per the contract with the City) were not previously specifically claimed as items of damage, though they were based on the same facts

as the items which were claimed, or were claimed without an award being made. *Id.* at ¶ 46.

(4) The JV's claims here (as compared to those made against the City which were resolved by stipulation during arbitration and an award which, after confirmation by the Connecticut Superior Court, resulted in payment received for all or part of the claims made) are for additional items of expense based on the contract performance after the original completion date of September 16, 1979, to December 31, 1982.

A meticulous and exhaustive review of the claims originally made, their processing and resolution, has been accomplished by analyzing the record. The examples discussed below confirm the review performed and illustrate the analysis which lead to the conclusions herein. It would serve no useful purpose to discuss and compare each of the claims made against the City, including the factual basis therefor, and those made here. The claims before the court can be categorized as noted for each plaintiff in Paragraphs (1) through (4) above. In short, plaintiffs claim that defendant's conduct in preparing and publishing the documents on which the Project was bid, the contract awarded and the Project administered, caused and necessitated much extra work and substantial delay in completing the job, obliging plaintiffs to be engaged in the performance of the contract until December 31, 1982, long beyond their estimated date of completion. Based thereon, they made claims against the City for additional payments, which they have since received, been awarded or otherwise agreed to. Now they seek additional amounts for:

(a) claims previously made but either not fully sustained or not sustained at all;

(b) interest on amounts paid as claimed;

(c) losses not previously specifically claimed but clearly based on the same facts as the previous claims; and

(d) costs of the same nature as previously claimed but for periods other than those for which claims were made.

However, the claims are now made against the engineer rather than the City. As against the City, the claims for extra expenses were based on allegedly uncontemplated facts arising in the performance of the contract. They were resolved by an arbitration procedure provided for in the contract. Now, against the engineers, consequent losses are claimed on the basis that such extra expense resulted from the engineers' wrongful conduct in the bid, award and performance of the contract. Defendant has moved for summary judgment on the basis that the resolution of plaintiffs' claims against the City bars the remaking of those claims here.

*Discussion*

On February 17, 1976, the JV contracted to construct the Project at a price of $32,-694,800. Exhibit 5. Cosgrove was the site-work subcontractor. Exhibit 22. Holzner was both an electrical subcontractor to the JV, Exhibits 1, 2 and 3, and a sub-subcontractor to ICI, Exhibit 7, the instrumentation and data logger subcontractor to the JV. Exhibit 6. The work was to be done by April 16, 1979. As of March 25, 1980, the work was 99% complete. The instrumentation and data logger systems largely delayed the completion until December 31, 1982—the extended completion date per change orders. Extra work prompted claims for additional compensation, which, after arbitration as provided by the contract, resulted in payments to plaintiffs being increased to $35,612,542. Exhibits 25, 40, 46, 76 and 77.

Four arbitrations occurred:

1. Cosgrove's claims were resolved by agreement with the City, which included a release by the JV and Cosgrove of all claims arising out of claim numbers 130, 348 and 32 and change order proposals 13, 20, 30 and 31, as presented for arbitration on December 15, 1977. Exhibit 54.

2. Holzner's claim for extra work through May 31, 1980, Exhibit 21, went to arbitration, resulting in an award against the City, Exhibits 18 and 19, which was affirmed by the Connecticut Superior Court. Exhibits A and 77.

3. The JV, for itself and the subcontractors, initiated arbitration, Exhibit 20, which ended with a stipulated award of $3,395,000, confirmed in the Connecticut Superior Court, Exhibit B, and Change Order # 90, Exhibit 76.

4. The JV asserted claims arising after June 26, 1980, when a general release, Exhibit 54, had been signed. These covered the period from June 26, 1980, to December 7, 1981, and were settled by payment of $226,226.69 to the JV for four extra work claims and $147,681 for extended performance claims. All of these claims cited, for justification, defendant's allegedly improper conduct, defective design specifications and deficient contract administration as the agent of the City—essentially the same conduct alleged herein as the basis for and cause of plaintiffs' extra work and, in turn, the unreasonable delay in completion of plaintiffs' respective performances.

The instrumentation/data logger problem was claimed to be the result of defendant's design errors. The City claimed it resulted from installation other than as per contract. This dispute was part of the fourth arbitration. Exhibit 49. The result was an award of $1,028,119 in added payments for extended performance costs from April 16, 1979, to December 31, 1982, for failure in the design of the data logger system and a computer component and for failure of CDM to resolve conflicts between engineers and contractors. The arbitrator also found the JV failed to install the system properly as per contract and awarded the City $521,570.19. These offsetting claims were resolved by the parties and an agreed sum was paid to the JV after the adjusted, net award was confirmed by the Connecticut Superior Court. *See* Exhibit 46.

Illustrations of the interrelation of the arbitrated claims, discussed in plaintiff's statement of facts and its memorandum filed on January 13, 1986, ¶¶ 9, 28, 46 and 68, and its claims here, are as follows:

(a) Cosgrove claimed $127,239.55 for extra work and extra gravel and fill. Exhibits 26–29. It settled and received $45,500. Exhibit 54. With no other factual basis, it now claims that it was "unable to complete its work ... by the completion date on which it based its bid." Exhibit 24, Supplemental Sheet A. Now it makes claims for costs of equipment, lost work opportunity, site cost overhead, lost profit and the amount claimed for gravel and fill over the $45,500 it received in settlement ($127,239.55 − $45,550 = $81,739.55).

(b) Holzner's claims for extra work against the City (claims B–1 and B–7, Exhibit 16 and 17) did not specifically demand amounts for extended site costs, home office overhead, lost profit, building improvement, equipment and personnel commitment, nor wage escalation costs (items 1, 2, 3, 4 in ¶ 28, Plaintiff's Statement of Facts) though some of the costs may, in fact, "have been an element of claim" for which an unallocated award was made. *Id.*

(c) ICI's claims are in several respects comparable to those noted in (b). It also now claims interest on the amount retained by the City for which it made claim against the City but achieved no recovery. Item 6, ¶ 46. *Id.*

(d) The JV's claims follow the patterns noted in (a), (b) and (c) above.

Defendant moves for judgment on grounds of:

1. the bar of res judicata;

2. the bar of accord and satisfaction; and

3. the bar of release and discharge.

As discussed below, defendant's position is sustained as to res judicata, accord and satisfaction, and overruled in part as to release and discharge.

## I. *Controlling Law*

Plaintiffs invoked diversity jurisdiction. 28 U.S.C. § 1332. The law of Connecticut thus controls. *Klaxon v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *see Ritchie v. Landau*, 475 F.2d 151, 154 (2d Cir.1973).

**1578**

## II. *Res Judicata*

■ The doctrine of res judicata requires three elements: (1) final determination of the claim in issue; (2) identity of parties or privies between first and second action; and (3) identity of claims or issues between first and second action. *Wade's Dairy, Inc. v. Fairfield*, 181 Conn. 556, 559–60, 436 A.2d 24 (1980). It is a simple conception that, when one party litigates a claim against another, he may not do so again.

### A. *Finality*

■ Finality is expressed in terms of a final judgment. *Corey v. Avco-Lycoming Division*, 163 Conn. 309, 317, 307 A.2d 155 (1972), *cert. denied*, 409 U.S. 1116, 93 S.Ct. 903, 34 L.Ed.2d 699 (1973). An arbitration award, whether or not sustained by a court judgment constitutes finality for res judicata. *Id.* at 318, 307 A.2d 155. The awards made as to plaintiffs' claims, including the stipulated award, constitute adjudication of the merits of plaintiffs' claims. *See generally Wade's Dairy*, 181 Conn. at 559–61, 436 A.2d 24; *Bridgeport Hydraulic Co. v. Pearson*, 139 Conn. 186, 196–98, 91 A.2d 778 (1952).

### B. *Identity of Parties*

■ An action which is adjudicated is conclusive on the parties and their privies as to each claim "relating to the cause of action which was actually made or might have been made." *Corey*, 163 Conn. at 317, 307 A.2d 155. In each arbitration, the JV was a party and in one arbitration Holzner was an actual party. Equally clear, when the subcontractors' interests were asserted by the JV, the subcontractors were privy to the proceedings not only because the JV was asserting claims under the Project contract, under which they were subcontractors, but because, in part, the JV was asserting claims in which the subcontractors had an interest and from which they received payment. Thus, all plaintiffs were privy to the proceedings. Id. at 319, 307 A.2d 155 (finding identity between union and employee by virtue of union contract). Whether defendant may invoke the doctrine depends on its privity with the City, since in none of the proceedings was it an actual party. Its privity is established by its contract with the City, performance of which constitutes the conduct alleged to be at fault. Its privity is further established by the fact that the conduct complained of here was the same conduct complained of in the arbitration proceedings, where the City was claimed to have acted through defendant, its agent. *Beach v. Milford Ice Co.*, 87 Conn. 528, 534, 89 A. 181 (1913).

Plaintiffs, as contractual parties, now assert rights to redress for losses and damages caused by defendant's preparation of the bid documents, the Project plans and specifications and administration of their construction contract with the City. If any duty is owed to them by defendant, it is because their contract performance was impacted by the information and material issued and published by defendant in anticipation of that contract and its administration of that contract for the City.

### C. *Identity of Claims or Issues*

■ The last element of res judicata is that the same cause of action be involved. The arbitration claims, based on defendant's conduct, were founded on the identical facts relied on here. The fact that different damages may, in part, be asserted here does not give rise to a different cause of action. A single group of facts giving rise to an injury is but one cause of action and, even though it "may give rise to rights for several different kinds of relief, it is still a single cause of action." *Bridgeport Hydraulic Co.*, 139 Conn. at 197, 91 A.2d 778. The application of different labels or invoking of different theories of recovery does not change, for res judicata purposes, one cause of action into several. This rule applies whether the entire claim for relief was presented in the first proceeding or not for the bar is against claims made or which "might have been made." *Corey*, 163 Conn. at 317, 307 A.2d 155. As each of the plaintiffs made, or could have made, all the claims now made

here in one or more of the arbitration proceedings,[1] and there is no showing as to why the present claims were not, or could not, have been made in arbitration, the rule applies. In response, plaintiffs claim: (a) defendant was not a privy to the action; and (b) the issues here were not raised in the arbitration. As to the first claim, plaintiffs argue that the test is whether defendant was a real party in interest. They cite *Ruocco v. Logiocco*, 104 Conn. 585, 134 A. 73 (1926), where a father sued defendant for having fathered a child by plaintiff's daughter. The defendant had previously been acquitted in a bastardy action which thus determined that defendant was not the father of the child born to plaintiff's daughter. The daughter's pregnancy and defendant's paternity were the grounds for the claimed seduction. The application of res judicata and the exploration of the element of privity were there analyzed in terms of the interests or rights being asserted. The bastardy action was brought by the father with the daughter seeking to recover the birth expenses, which, if awarded, would "have been a recovery on his own behalf." *Id.* at 594, 134 A. 73. The seduction action was brought by the father alone to recover "similar, and in some respects the same, expenses." *Id.* As res judicata was held to apply, plaintiff was precluded from recovering different damages based on the same claim, the paternity of the child. As the father was an actual party to the bastardy case, privity was not in issue as it is in the case at bar, but the essential holding cannot be found to lend weight to plaintiffs' argument. *Ladany v. Assad*, 91 Conn. 316, 99 A. 762 (1917), also relied on by plaintiffs, involved a jury decision where res judicata was pleaded based on a prior judgment for defendant on a claim based on ownership of a vehicle. With plaintiffs' knowledge, that judgment was entered in a case against a party claimed to have been plaintiffs' bailee (plaintiffs allegedly being the bailor). As the verdict was allowed to stand, no rule of law articulated by *Ladany* supports plaintiffs' posture. *Beach*, 87 Conn. 528, 89 A. 181 (1913), sustained the application of res judicata in successive actions against principal and agent, for "[l]iability for the servant's or agent's acts should be determined in a single action." *Id.* at 536, 89 A. 181. Thus, *Beach* supports defendant's claim here, not plaintiffs'. None of plaintiffs' other authorities in fact support their claim.[2] *See generally Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281 (2d Cir. 1986) (summary judgment proper when parties collaterally estopped from relitigating issue already presented and considered in arbitration proceeding); *Ritchie*, 475 F.2d at 155–56 (judicial process not open for repeated consideration of claims by those who were disappointed with previous adjudications, including arbitration proceeding).

In support of their claim that the arbitration does not bar this action as the same claims were not there submitted, plaintiffs cite *Hamill v. Neikind*, 171 Conn. 357, 370 A.2d 959 (1976) (not at page 342 as cited by plaintiffs), a case which has no reference to res judicata. Plaintiffs seem to have intended to cite *Local 1919 v. Connecticut Labor Relations Board*, 171 Conn. 342, 370 A.2d 952 (1976), where the court decided that an arbitrator's limited factual decision regarding solely the application of the contractual parity clause to the circumstances in question did not foreclose later consideration of the validity of the parity claim—an issue that the arbitrator could not have decided given the limited scope of the issues submitted. *Id.* at 355, 370 A.2d 952. That holding does not apply to the facts of this case, where the issue is the application of res judicata where a single set of facts were previously the basis for some claims

---

**1.** The parties were in part finished with their work under the contract at the time of the third arbitration and were all finished by the time of the fourth arbitration in which the award was made on July 13, 1983.

**2.** *United States v. Stull,* 105 F.Supp. 568, 571 (D.Conn.), *aff'd,* 200 F.2d 413 (2d Cir.1952), for example, found no privity between a tenant evicted from private property and the United States which was enforcing, in a subsequent suit, a housing statute.

of redress and now are the basis for the same and some extensions of or additional claims of redress.

As plaintiffs' claims are without merit, defendant's motion for summary judgment is granted on the basis of res judicata.

### III. *Accord and Satisfaction*

■ The elements of this defense are (a) agreement to settle a disputed claim; and (b) fulfillment of the agreement's terms. *Gilreath v. Sentry Ins. Co.*, 38 Conn.Sup. 422, 423, 450 A.2d 873 (1982). There is no question but that plaintiffs entered into an agreement to settle claims against the City and that agreement was fulfilled by the City. Defendant claims that the settlement was of the same claims and in its memoranda has substantiated that claim by a detailed analysis. Plaintiffs have offered no counter analysis, have not argued the point and are thus deemed not to contest that claim. Local Rule 9(a). Defendant does claim privity entitles it to stand in the City's shoes to make this defense. *See International Halliwell Mines Ltd. v. Continental Copper & Steel Indust.*, 544 F.2d 105, 110 (2d Cir.1976) (under New York law, the "consideration for the release of one wrongdoer is deemed to constitute the recovery for the victim's losses ..."). Plaintiffs argue this defense is inapplicable on the basis that the defense is not extended beyond the parties to the agreement and that defendant is not in privity with the City. The latter argument is resolved against plaintiffs on the same basis as it was in relation to the defense of res judicata.

■ The defense is one of repose, i.e., the same disputes should not be the subject of successive claims. The risk of duplicative recoveries and inconsistent results warrants the bar. A settlement is but an alternative disposition to adjudication of a claim and thus the same purposes are served by this defense as is the case with res judicata from which it follows that the same breadth of availability of the res judi-

cata defense should be extended to this defense. The principles underlying res judicata apply equally to the defense of accord and satisfaction and lead to the conclusion that such defense may be invoked by one in privy with a party to the agreement. Plaintiffs claim that they did not intend resolution of all claims flies in the face of the record. They can no longer make any of these claims against the City—the arbitration proceedings exhausted their ability to obtain redress from the City. The release executed refers broadly to the claims resolved. What plaintiffs have done is to make claims against the City based on defendant's conduct, its acts or omissions. On the same basis, they now seek to assert the same claims, though on slightly different theories of damage against defendant. The resolution of their claims against the principal, the City, based on the conduct of the agent, resolves also, by accord and satisfaction, the claims based on the same conduct against the agent. Defendant is not a joint tortfeasor and Connecticut's statutory preclusion of a joint tortfeasor benefiting from a release, Conn.Gen.Stat. § 52–572e, is of no avail to plaintiffs. That statute applies to joint tortfeasors separately liable by reason of separate conduct which conjunctively affects another. The resolution of the principal's vicarious liability for the acts of its agent bars further consideration of the identical conduct here asserted against the agent.[3]

For the foregoing reasons, defendant's motion for summary judgment, to the extent it is based on the defense of accord and satisfaction, is granted.

### IV. *Release and Discharge*

■ Defendant points to two releases as the basis of its defense. One was executed on October 19, 1978, and pertained only to any and all claims made by Cosgrove related to four bases for extra payments. Exhibit 54. The second, dated June 26, 1980,

---

**3.** As of the conclusion of their work, plaintiffs' claims were liquidated, as a matter of law, *W.H.*

*McCune, Inc. v. Revzon*, 151 Conn. 107, 193 A.2d 601 (1963), cited by plaintiffs, is inapposite.

was a general release, broadly couched with specific reference to the resolution of all claims including those of subcontractors. Exhibit 20, ¶ 6. Each was executed by the JV only. The latter excepted claims pertaining to the instrumentation and data logger systems.[4] From these, defendant invokes the agency theory that release of the principal operates to release the same claims against the principal's agents. Plaintiffs argue the privity question again and the Connecticut statute pertaining to release of joint tortfeasors held above not to be applicable to a non-joint tortfeasor situation as between the City and defendant. As a matter of law, the first release bars claims originating with Cosgrove at and prior to its execution, the second release bars claims originating with the JV and the subcontractors at and prior to its execution, and the operation of the Project contract extinguishes claims as of the last payment. The arbitration ending in 1983 suggests some claims were still open. Defendant's defense of release and discharge is sustained as to all claims of all plaintiffs originating prior to December 2, 1982, the acceptance of the last payment under the contract, except as to claims pertaining to the instrumentation and data logging systems and/or as were arbitrated in the process which ended in 1983.

Accordingly, there being no genuine issues of material fact in the record with respect to defendant's three defenses and it appearing that defendant is entitled to judgment as a matter of law, the motion for summary judgment is granted on the grounds of res judicata and accord and satisfaction and, subject to the noted limitation, on the ground of release and discharge.

SO ORDERED.

**4.** A third release is in the record, dated November 16, 1982, and found as Exhibit A to the Marcus affidavit filed by plaintiffs in opposition to the motion in which rights against other than the City were reserved. The subcontractors were not named, but the JV purported to act on their behalf. Of course, the operation of the law to discharge agents of released principals cannot simply be obviated by an agreement.

Defendants do not claim summary judgment as to these claims except by virtue of the defenses of res judicata and accord and satisfaction. It is clear that plaintiffs received the last payment under the contract, thus releasing the City and the engineer. Exhibit 5, Article 25. *See* Murray Transcript, ¶¶ 9–11.