[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Gregory McGhee, appeals from a June 6, 2001 final decision of the defendant, Connecticut State Board of Labor Relations ("the labor board"), holding that the defendants, Hartford Federation of Paraprofessionals CFEPE/AFT/AFL-CIO ("the union") and the Hartford Board of Education ("the board of education"), did not violate the Municipal Employees Relations Act ("MERA"), General Statutes § 7-467 et seq. The plaintiff's appeal is authorized by General Statutes §§ 7-471
(5), 31-109 and 4-183 of the Uniform Administrative Procedure Act CT Page 6473 ("UAPA").
On December 30, 1999, the plaintiff filed a complaint with the labor board, alleging that the union and the board of education coerced him into settling his wrongful termination claim rather than proceed with a scheduled grievance arbitration. (Return of Record ("ROR"), Item 1.) Hearings were subsequently held on October 16, 2000 and January 16, 2001. (ROR, Items 3 and 5.) On June 6, 2001, the labor board issued its final decision, making the following relevant findings of fact:
 4. On June 11, 1998, the Union filed a grievance on behalf of the Complainant challenging his [June, 1998] termination.
* * *
 6. On August 18, 1998, the Union filed a demand for arbitration regarding the Complainant's grievance.
* * *
 8. During the preparation for the arbitration hearing, the Complainant supplied [the union staff representative Joe] Dubin with the names of several potential witnesses for the arbitration. Dubin contacted the individuals. Three of the individuals were not interested in testifying on the Complainant's behalf. A fourth individual was sympathetic to the Complainant's situation but had no relevant information for the case.
 9. At the final preparation meeting before the arbitration, Dubin and the Complainant discussed the possibility of settling the case and the Complainant agreed that Dubin could try to settle the case. During the meeting, Dubin explained to the Complainant that he might lose the case if it went forward to a hearing.
* * *
 11. On March 26, 1999, the date of the arbitration hearing, the Complainant met with Dubin and Union President Betty Gadson. . . . Dubin then began to negotiate a settlement agreement with the Board of Education. During the time that Dubin was CT Page 6474 negotiating with the Board of Education, he consulted with the Complainant about the terms. The Board of Education initially offered approximately $5000 to settle the case. The Complainant requested more money and did not want to include a requirement that he withdraw a pending CHRO complaint that he had filed after his termination. Dubin was able to negotiate additional money but was unable to remove the clause concerning withdrawal of the CHRO complaint. Before signing the agreement, the Complainant spoke with his mother by telephone about whether he should sign the agreement. . . . The Complainant agreed to the settlement terms and Dubin offered him a pen to sign. . . .[1]
 12. A week or two after the settlement agreement was sigued, the Complainant met with Dubin . . . [to ask] if they could renege on the settlement agreement because he had become dissatisfied with the amount of money he had received and because he felt that he was walking away from a fight. The meeting lasted for more than an hour.
 13. [The board of education's attorney was informed by letter dated April 12, 1999 from the Complainant's newly-hired attorney] "that McGhee has no intention of abiding by the settlement agreement . . . which was signed by him under extreme duress."
 14. The Board of Education issued a check to the Complainant in the amount of $12,000 which he cashed on or about May 3, 1999.
 15. On or about August 31, 1999, [the Complainant's attorney] requested withdrawal of the pending CHRO complaint which was closed on or about September 1, 1999.
 16. In 1997, the Union represented the Complainant in an arbitration regarding a prior termination from the Hartford public schools. The Complainant was reinstated by the arbitrator.
(ROR, Item 9, pp. 2-4.) CT Page 6475
Based upon these findings of fact, the labor board concluded that neither the union nor the board of education, coerced the plaintiff to settle his grievance in violation of MERA. According to the labor board, the union diligently pursued the plaintiff's grievance, including fully preparing for the arbitration hearing. The union did not force the plaintiff to accept the settlement, either by physically forcing his hand to sign the agreement or by making false statements to induce him to agree. Further, there was no evidence in the record to show that the board of education had done anything beside negotiate in good faith to resolve the pending grievance and CHRO suit. The plaintiff's complaint was therefore dismissed. (ROR, Item 9, pp. 4-7.)
The plaintiff has appealed from this decision to this court.[2] The court reviews the issues raised by the plaintiff in accordance with the limited scope of judicial review applied by the UAPA. Dolgner v.Alander, 237 Conn. 272, 280 (1996). This standard of review has been set forth in MacDermid, Inc. v. Department of Environmental Protection,257 Conn. 128 (2001): "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act [General Statutes § 4-166 et seq. (UAPA)] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . ." (Citations omitted; internal quotation marks omitted.) Id., 136. "The substantive evidentiary rule governs judicial review of administrative fact-finding under UAPA. . . . This substantial evidence test is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the [plaintiff] to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Citations omitted; internal quotation marks omitted.) Id., 136-37.
"The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the [agency], we cannot disturb the conclusion reached by [it]. . . ." (Citations omitted.) Domestic Violence Services of Greater New Haven,Inc. v. FOIC, 47 Conn. App. 466, 470 (1998); State Board of LaborRelations v. South Windsor, 39 Conn. Sup. 338, 345 (1983).
Under the substantial evidence test, the court concludes that the labor board correctly decided that the plaintiff was not forced into a settlement by the union, the board of education or these defendants acting jointly. It is true as a matter of law that "[a] union must represent its members in good faith. This duty of fair representation CT Page 6476 derives from the union's status as the sole bargaining representative for its members." Labbe v. Pension Commission, 239 Conn. 168, 193 (1996); General Statutes §§ 7-468 (d) and 7-470 (b)(3). Factually, however, the labor board found against the plaintiff that the union's actions were not in good faith. In its factual conclusions, the labor board rejected, as they were free to do, the plaintiff's testimony that he was physically and psychologically forced to agree to the settlement, that his potential witnesses were silenced by the defendants, and that Dubin and Gadson testified falsely at the hearings. The labor board might well conclude that plaintiff failed to prove that the union officials were trying to protect the board of education from a damaging CHRO complaint. There is substantial evidence in the record to support the conclusions of the labor board, and their rejection of the plaintiff's contentions. (ROR, Item 3, pp. 55-67 (relating the course of negotiations on the morning of the arbitration and the plaintiff's consent to the ultimate settlement); Item 5, pp. 100-01 (union president's testimony on settlement proceedings).)
An employer may not interfere with an employee's free exercise of his collective-bargaining rights. Local 1219 v. Connecticut Labor RelationsBoard, 171 Conn. 342, 349 (1976); West Hartford v. West Hartford PoliceUnion, Superior Court, judicial district of Hartford-New Britain, Docket No. 574188 (April 27, 1998, McWeeny, J.) (22 Conn.L.Rptr. 168); General Statues §§ 7-468 (a), 7-470 (a). But again, the labor board could correctly find that the plaintiff had failed to prove any such action by the board of education in this matter, and these findings are supported by substantial evidence. (ROR, Item 3, pp. 14-15 (the board of education representatives were not in the same room as the plaintiff and the union personnel); pp. 62-63 (its representatives offered a lower severance amount than was finally agreed to).)
The plaintiff raises the matter of the prior termination in 1996, and his difficulties on returning to the school system after prevailing in the earlier grievance. But he does not indicate what factual or legal relevance this termination and his subsequent difficulties had on his contention that the union and the city acted in bad faith in resolving his second termination. The prior termination on the other hand supports the union's contention that it had tried to act in good faith and in the plaintiff's best interests.[3]
The plaintiff makes the further claim that the labor board did not consider other matters raised in his complaint, including the alleged impropriety of his termination ("no just cause") and the subsequent withdrawal of his CHRO case. These are not subjects that fall within the jurisdiction of the labor board, however. The labor board may not consider whether discipline was imposed for good cause, a contractual CT Page 6477 question, but only whether the plaintiff was subjected to unfair labor practices, as set forth in the general statutes. Local 1219 v. ConnecticutLabor Relations Board, supra, 171 Conn. 354; L. Suzio Construction Co.v. State Board of Labor Relations, 148 Conn. 135, 144-45 (1961): "This question had reference only to the violation of the contract. It did not involve the determination whether the action of the plaintiff constituted unfair labor practices within the meaning of our Labor Relations Act." Certainly, the withdrawal of the CHRO case by the plaintiff's attorney some weeks after the settlement would not fall within the jurisdiction of the labor board.
Finally, the plaintiff raises the procedural fairness of the hearings before the labor board. The record shows that the plaintiff was given an opportunity to present his case, to object to the defendants' exhibits, to take recesses to review documents, to cross-examine witnesses, and to brief the issues before the labor board. (ROR, Item 3, pp. 3, 8, 20-2123-27, 72; Item 5, pp. 96-98, 104, 112, 117.) This proceeding therefore met the statutory standards for conduct of a hearing. Wasfi v. Dept. ofPublic Health, 60 Conn. App. 775, 782 (2000), cert. denied, 255 Conn. 932
(2001); General Statutes § 4-177c (a)(2).
The court has considered the arguments raised by the plaintiff and finds no basis to reverse the decision of the labor board. Therefore, the plaintiff's appeal is dismissed.
Henry S. Cohn, Judge