COMMISSIONER OF ENVIRONMENTAL PROTECTION *v.*
CONNECTICUT BUILDING WRECKING COMPANY, INC.
(14435)

COMMISSIONER OF ENVIRONMENTAL PROTECTION *v.*
CONNECTICUT BUILDING WRECKING
COMPANY, INC., ET AL.
(14436)

COMMISSIONER OF ENVIRONMENTAL PROTECTION *v.*
GENO CAPOZZIELLO ET AL.
(14437)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued April 29—decision released August 10, 1993

*Gary A. Mastronardi,* for the appellants (defendants Connecticut Building Wrecking Company, Inc., and Geno Capozziello).

*Robert B. Teitelman,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (plaintiff).

PETERS, C. J. The principal issue in these consolidated appeals is the constitutional necessity of a jury trial in an environmental enforcement action. The trial court rendered judgment in these three environmental actions, which had been consolidated for trial, against the defendants, Connecticut Building Wreck-

ing Company, Inc. (CBW), and Geno Capozziello and Russell Capozziello,[1] and in favor of the plaintiff, the commissioner of environmental protection (commissioner). The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm in part and reverse in part.

The commissioner brought the three cases from which this appeal arises against one or all of the defendants for alleged environmental violations committed in Bridgeport and Monroe. In Docket No. 14435, the commissioner sought to enforce a June 1, 1986 final administrative order (1986 order) requiring CBW to discontinue all waste deposit at 329 Central Avenue in Bridgeport (Bridgeport site). The complaint in Docket No. 14435 also alleged that CBW had committed solid waste violations, water pollution violations and unreasonable pollution at the Bridgeport site from June 1, 1986, to the date of the complaint. The commissioner sought injunctive relief and civil penalties against CBW pursuant to General Statutes §§ 22a-18, 22a-226, 22a-435 and 22a-438.[2]

---

[1] Although Russell Capozziello did not file a brief in this court, he filed a "Notice of Adoption of Arguments" seeking to adopt the claims presented to the court by Geno Capozziello and CBW. The latter two parties did not object to this adoption.

In Docket No. 14436, Town Line Body Shop and Clifford Dayton were also named as defendants. The parties entered a stipulated judgment as to all claims against those two defendants, who are not parties to these appeals. Moreover, in Docket Nos. 14435 and 14436, the original defendants impleaded the city of Bridgeport, but later withdrew all claims against it. The city of Bridgeport is not a party to these appeals.

[2] General Statutes § 22a-18 provides in relevant part: "POWERS OF COURT. (a) The court may grant temporary and permanent equitable relief, or may impose such conditions on the defendant as are required to protect the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction."

General Statutes § 22a-226 provides in relevant part: "CIVIL PENALTY. (a) Any person who violates any provision of this chapter or any regula-

In Docket No. 14436, the commissioner alleged that all of the defendants had illegally dumped solid waste at 781 Main Street in Monroe (Monroe site), a designated wetland, and had created a discharge into the groundwater without a permit. The commissioner sought injunctive relief and civil penalties against all of the defendants pursuant to General Statutes § 22a-438.

tion, permit or order adopted or issued under this chapter, or any owner of land who knowingly permits such violations to occur on his land, shall be assessed a civil penalty not to exceed twenty-five thousand dollars, to be fixed by the court, for each offense. Each violation shall be a separate and distinct offense and, in the case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense. The attorney general, upon request of the commissioner, shall institute a civil action in the superior court for the judicial district of Hartford-New Britain to recover such penalty.

"(b) If any person violates any provision of this chapter or any regulation, permit or order adopted or issued under this chapter, the commissioner may request the attorney general to bring an action in the superior court for the judicial district of Hartford-New Britain to enjoin such person from such violation and to order remedial measures to prevent, control or abate pollution. If two or more persons are responsible for a violation of any provision of this chapter or any regulation, permit or order adopted or issued under this chapter, such persons shall be jointly and severally liable under this subsection."

General Statutes § 22a-435 provides in relevant part: "INJUNCTION. If any person or municipality fails to comply with any order to abate pollution, or any part thereof, issued pursuant to the provisions of section 22a-428, 22a-431 or 22a-433, and no request for a hearing on such order or appeal therefrom is pending and the time for making such request or taking such appeal has expired, the commissioner may request the attorney general to bring an action in the superior court for the judicial district of Hartford-New Britain to enjoin such person or municipality from maintaining such pollution and to comply fully with such order or any part thereof. All actions brought by the attorney general pursuant to the provisions of this section shall have precedence in the order of trial as provided in section 52-191."

General Statutes § 22a-438 provides in relevant part: "FORFEITURE FOR VIOLATIONS. PENALTIES. (a) Any person who or municipality which violates any provision of this chapter, or section 22a-6 or 22a-7 shall be assessed a civil penalty not to exceed twenty-five thousand dollars, to be fixed by the court, for each offense. Each violation shall be a separate and distinct offense and, in case of a continuing violation, each day's continuance thereof

In Docket No. 14437, the commissioner alleged substantially the same claims against the Capozziellos as those alleged against CBW in Docket No. 14435, with the exception of the claim relating to the 1986 order, as that order had been directed solely against CBW. The commissioner sought injunctive relief and civil penalties against the Capozziellos pursuant to §§ 22a-18, 22a-226, 22a-435 and 22a-438.

In each of the three cases, the defendants asserted several special defenses, most of which are not relevant to these appeals. In Docket No. 14437, the Capozziellos asserted the defenses of res judicata and collateral estoppel, which the trial court, *Stengel, J.,* rejected. In addition, the trial court, *M. Hennessey, J.,* granted a motion by the commissioner to strike Docket No. 14437 from the jury docket.

After a consolidated trial to the court, the trial court, *Stengel, J.,* made the following findings. Since the

shall be deemed to be a separate and distinct offense. The attorney general, upon complaint of the commissioner, shall institute a civil action in the superior court for the judicial district of Hartford-New Britain to recover such penalty. In determining the amount of any penalty assessed under this subsection, the court may consider the nature, circumstances, extent and gravity of the violation, the person or municipality's prior history of violations, the economic benefit resulting to the person or municipality from the violation, and such other factors deemed appropriate by the court. The court shall consider the status of a person or municipality as a persistent violator. The provisions of this section concerning a continuing violation shall not apply to a person or municipality during the time when a hearing on the order pursuant to section 22a-436 or an appeal pursuant to section 22a-437 is pending.

"(b) Any person who or municipality which wilfully or with criminal negligence violates any provision of this chapter, or section 22a-6 or 22a-7 shall be fined not more than twenty-five thousand dollars per day for each day of violation or be imprisoned not more than one year or both. A subsequent conviction for any such violation shall carry a fine of not more than fifty thousand dollars per day for each day of violation or imprisonment for not more than two years or both. For the purposes of this subsection, person includes any responsible corporate officer."

issuance of the 1986 final order, the defendants[3] had continuously violated that order by "blatantly disregard[ing]" its directives, and had violated § 22a-207 et seq. by operating a volume reduction plant and a transfer station at the Bridgeport site. In addition, the defendants had, in violation of § 22a-32, deposited debris at the Monroe site, a wetland, without a permit. As to the allegation of water pollution at the Bridgeport site, the trial court found that the commissioner had not sustained the requisite burden of proof.

In view of these violations, the trial court enjoined the defendants from depositing, receiving, processing and transferring waste at the Bridgeport site. The court ordered them to remove the existing debris from that site and to dispose of it at an authorized facility, with certain restrictions on out-of-state disposal. The court also enjoined the defendants from either depositing solid waste or owning or operating a solid waste transfer station anywhere in the state without a permit. Finally, the court ordered the defendants to maintain a record of waste removal activities at the Bridgeport site, to be submitted weekly to the commissioner, until such time as all waste had been removed from that site.

The trial court also imposed civil penalties totaling $868,950, including: in Docket No. 14435, $417,200 pursuant to § 22a-226 for the violation of the 1986 order for 1192 days, at $350 per day; in Docket No. 14436, $162,750 pursuant to § 22a-438 for the unauthorized dumping of debris in a wetland area for 651 days, at $250 per day, in violation of § 22a-32; and, in Docket No. 14437, $289,000 pursuant to § 22a-226 for operating a volume reduction plant and a transfer station without a permit for 578 days, at $500 per day, in vio-

---

[3] Although the trial court found that all of the defendants had violated the 1986 order, that order was effective against only CBW. Moreover, CBW was the sole defendant in Docket No. 14435, in which the commissioner sought to enforce the 1986 order.

lation of § 22a-207. In accordance with *Carothers* v. *Capozziello,* 215 Conn. 82, 103–104, 574 A.2d 1268 (1990), and § 22a-438, the trial court determined the appropriate amount of penalties on the basis of the gravity of the violations, the substantial period of time over which the defendants had committed the violations, the substantial profits generated by the violations, the hazard posed to the public because of the violations, the flagrancy with which the defendants had committed the violations and the defendants' lack of good faith in failing to comply with applicable environmental requirements. The trial court imposed joint and several liability for each of the fines on each defendant because "all defendants are equally answerable and responsible to the Commissioner."

On appeal, the defendants claim that: (1) the trial court, *M. Hennessey, J.,* improperly granted the commissioner's motion to strike Docket No. 14437 from the jury docket; and (2) the trial court, *Stengel, J.,* improperly (a) rejected the defense of res judicata in Docket No. 14437, (b) held the Capozziellos liable, jointly and severally with CBW, for the civil penalty imposed in Docket No. 14435, and (c) imposed a civil penalty in Docket No. 14436, for 651 days of continuing violations.[4] We agree with the defendants as to the claim concerning the penalty in Docket No. 14435 and affirm the judgment of the trial court as to the remaining claims.

---

[4] The defendants also contend that, if the trial court's imposition of civil penalties for 651 days of continuing violations in Docket No. 14436 was proper, General Statutes §§ 22a-226 and 22a-438 violate the federal and state constitutions' guarantees of equal protection. The defendants challenge those provisions' facial validity as well as their validity as applied. The defendants' argument on this issue, however, comprises just one sentence in its brief, relies only generally on one case and is devoid of analysis. Accordingly, we decline to review this inadequately briefed claim. See *Cheshire Mortgage Service, Inc.* v. *Montes,* 223 Conn. 80, 83 n.4, 612 A.2d 1130 (1992).

# I

The Capozziellos[5] claim that the trial court, *M. Hennessey, J.,* improperly struck the third case, Docket No. 14437, from the jury docket.[6] We disagree.

Article first, § 19, of the Connecticut constitution guarantees a jury trial in all cases for which "there was a right to a trial by jury at the time of the adoption of [that] provision," which was 1818. (Internal quotation marks omitted.) *Skinner* v. *Angliker,* 211 Conn. 370, 373–74, 559 A.2d 701 (1989); see *Canning* v. *Lensink,* 221 Conn. 346, 350–51, 603 A.2d 1155 (1992); *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* 216 Conn. 40, 50, 578 A.2d 1054 (1990). Article first, § 19, also provides the right to a jury trial in cases that are substantially similar to cases for which the right to a jury trial existed at common law in 1818. *Skinner* v. *Angliker,* supra, 374. "Accordingly, in determining whether a party has a right to a trial by jury under the state constitution . . . the court must ascertain whether the action being tried is similar in nature to an action that could have been tried to a jury in 1818 when the state constitution was adopted. This test requires an inquiry as to whether the course of action has roots in the common law, and if so, whether the remedy involved was one in law or equity." Id., 375–76.

In a case that involves both legal and equitable claims, " 'whether the right to a jury trial attaches depends

---

[5] Although all defendants join this argument, we consider only the Capozziellos to have raised it because CBW, which was not a defendant in Docket No. 14437, would have no standing to challenge the trial court's grant of the commissioner's motion to strike that case from the jury docket.

[6] The commissioner argues that the Capozziellos waived any entitlement to a jury because their jury claim was untimely. Because the commissioner did not rely on an alleged waiver in its motion to strike Docket No. 14437 from the jury docket, and because the trial court did not rely on an alleged waiver in its grant of the commissioner's motion to strike, we will not address the waiver claim here.

upon the relative importance of the two types of claims.' " *Texaco, Inc.* v. *Golart,* 206 Conn. 454, 458–59, 538 A.2d 1017 (1988). " '[W]here the essential right asserted is equitable in its nature and damages are sought in lieu of equitable relief or as supplemental to it in order to make that relief complete, the whole action is one in equity and there is no right to a jury trial.' " *Dick* v. *Dick,* 167 Conn. 210, 220, 355 A.2d 110 (1974). A jury trial is required on legal claims that are joined in the same action with equitable claims only if " 'the essential basis of the action is such that the issues presented would be properly cognizable in an action of law . . . even though equitable relief is [also] asked . . . .' " *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 45, 495 A.2d 1034 (1985).[7]

The Capozziellos do not claim that environmental enforcement actions existed at common law in 1818, but rather that such actions are substantially similar to actions in debt, which existed at common law in 1818 and could be tried to a jury. In support of this contention, they cite *Tull* v. *United States,* 481 U.S. 412, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (1987), in which the United States Supreme Court held that the seventh amend-

---

[7] General Statutes § 52-219 is not to the contrary. That provision states: "Whenever an action brought to recover damages and also to obtain equitable relief has been placed upon the docket as a jury case, the determination of the equitable issues raised by the pleadings shall not prevent a jury trial of the claim for damages, unless both parties agree in writing to waive a jury, or unless the determination of the equitable issues has necessarily adjudicated all the facts upon which the claim for damages rests." Section 52-219 applies in cases in which the action is properly on the jury docket. The question presented here, however, is *whether* this case should be on the jury docket. Accordingly, it is appropriate to apply our well established rules, developed by the courts to implement the constitutional right to a jury trial, to determine whether a jury trial is required at all. See *Texaco, Inc.* v. *Golart,* 206 Conn. 454, 458–59, 538 A.2d 1017 (1988); *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 45, 495 A.2d 1034 (1985); *Franchi* v. *Farmholme, Inc.,* 191 Conn. 201, 211, 464 A.2d 35 (1983); *Dick* v. *Dick,* 167 Conn. 210, 220, 355 A.2d 110 (1974).

ment[8] guarantees a jury trial in actions for civil penalties and injunctive relief under the federal Clean Water Act, 33 U.S.C. § 1251 et seq.[9] We are not persuaded.

In Connecticut, an environmental enforcement action for injunctive relief and civil penalties, like Docket No. 14437, is not substantially similar to an action in debt. A common law action in debt lies "where there [is] due a sum certain or capable of reduction to certainty." *Anderson* v. *Bridgeport,* 134 Conn. 260, 264, 56 A.2d 650 (1947). By contrast, the equitable common law action in assumpsit "might be brought to recover *unliquidated* damages." (Emphasis added.) Id., 264–65; see also *Bailey* v. *Goshen,* 32 Conn. 546, 549 (1865). A principal characteristic of an action in debt, therefore, is that the sum to be recovered is certain and liquidated: "Debt is an action founded on contract, express or implied, in which the certainty of the sum, or duty appears, and in which the plaintiff is to recover the sum in numero, and not in damages." 2 Z. Swift, A System of the Laws of the State of Connecticut (1796) p. 127.

In this case, although the complaint requested a specified amount of damages, the statutory maximum, the commissioner nonetheless sought an unliquidated sum from the Capozziellos. The penalty requested in the complaint was not certain in the sense that it was tied to a contractual obligation or debt. In addition, §§ 22a-226 and 22a-438, pursuant to which the trial court imposed the challenged penalty, give discretion to the trial court to determine, within specified guide-

---

[8] The seventh amendment to the United States constitution provides: "In Suits at common law . . . the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

[9] The Capozziellos concede that we are not bound in our state constitutional inquiry by the United States Supreme Court's decision in *Tull* v. *United States,* 481 U.S. 412, 107 S. Ct. 1831, 95 L. Ed. 2d 365 (1987).

lines, the appropriate amount of the daily fine. See General Statutes §§ 22a-226 and 22a-438, set out in footnote 2; see also *Keeney* v. *L & S Construction,* 226 Conn. 205, 626 A.2d 1299 (1993). Accordingly, an environmental action like Docket No. 14437 cannot, consistently with Connecticut's common law history, be considered substantially similar to an action in debt, for which a state constitutional right to a jury trial would exist.

Moreover, the Capozziellos' heavy reliance on the United States Supreme Court's decision in *Tull* is unavailing. In holding that the seventh amendment requires jury trials in actions brought pursuant to § 1319 (d) of the federal Clean Water Act, the court in *Tull* noted that, before the enactment of the seventh amendment, English courts had held that a civil penalty suit is "a particular species of an action in debt that was within the jurisdiction of the courts of law." *Tull* v. *United States,* supra, 418. The court in *Tull* also recognized that, after the enactment of the seventh amendment, federal courts had treated a suit for a civil penalty as an action in debt requiring a jury trial. Id. This federal history, as recited in *Tull,* is thus inconsistent with our state's history concerning an action in debt.

Furthermore, even if we were to agree that a jury trial would be constitutionally required on a claim for civil penalties standing alone, we are not persuaded that the United States Supreme Court's characterization in *Tull* of the nature of a federal environmental enforcement action as primarily legal applies to the state environmental enforcement action at issue here. The court in *Tull* concluded that, because § 1319 (d) authorizes the court to weigh various considerations, some reflecting concern for legal relief and some reflecting concern for equitable relief, in determining the appropriate amount of penalties to impose, § 1319 (d)

"reflects more than a concern to provide equitable relief." Id., 423. Accordingly, the court determined, on the basis of the mixed nature of the relief contemplated by § 1319 (d), that that relief was sufficiently legal to require a jury trial pursuant to the seventh amendment.

Sections 22a-226 and 22a-438, like § 1319 (d), authorize the court to consider a variety of factors to determine the appropriate penalty. Although some of those factors, such as gravity of the violations, suggest goals of retribution or punishment, which have historically been the province of courts of law, other factors, such as the profit generated by the illegal conduct, suggest a goal of restitution, an equitable remedy. In our view, because the legislature granted authority to consider *all* of these factors, when relevant, this inquiry is not dispositive of whether the action is primarily equitable or primarily legal. Accordingly, we must determine, on the basis of other factors, the nature of this environmental action, in which the commissioner sought both monetary penalties and injunctive relief. See *Texaco, Inc.* v. *Golart,* supra, 454; *United States Trust Co.* v. *Bohart,* supra, 45.

In the present case, the trial court's judgment includes extensive injunctions against the Capozziellos aimed at gaining their compliance with the applicable statutes, as well as a penalty that, although substantial, does not approach the statutory maximum. By contrast, in *Tull,* the government had sought a penalty of more than $22 million and "modest equitable relief," leading the United States Supreme Court to conclude that the enforcement action sought relief that was primarily legal in nature.

More generally, General Statutes § 22a-1, the legislature's statement of environmental policy, asserts the importance of protecting and maintaining the natural resources of the state and of preserving the status quo

with regard to the quality of the environment. We consider this legislative goal of protecting the environment through preservation and restoration of natural resources to be a dominant goal in this and other environmental enforcement actions. Because this goal is restitutionary, or equitable, in nature, we are persuaded that environmental enforcement actions under our state's environmental statutes are primarily equitable.

Accordingly, in light of our common law history concerning the action in debt,[10] the distinctions between this case and *Tull* and the legislative goal of preserving environmental quality, we conclude that article first, § 19, does not require a jury trial in environmental enforcement actions. The Capozziellos' claim is, therefore, without merit.

[10] We disagree with the dissent's assertion that, under Connecticut common law prior to the adoption of article first, § 19, of the Connecticut Constitution in 1818, actions for civil penalties were tried to a jury. First, we note that the Capozziellos do not make this historical claim. Rather, their contention that they are entitled to a jury trial on the claim for civil penalties in Docket No. 14437 relies upon the alleged analogy between an environmental action for civil penalties and an action in debt.

Second, we do not read *Pettis* v. *Dixon,* 1 Kirby (Conn.) 179 (1786), to support the dissent's claim. That case involved an action in debt predicated on an alleged violation of a statute requiring the payment of duties on goods imported into the state. In light of the description in our case law and in Swift's 1796 treatise of an action in debt as involving a sum certain; see, e.g., *Anderson* v. *Bridgeport,* 134 Conn. 260, 264, 56 A.2d 650 (1947); 2 Z. Swift, A System of the Laws of the State of Connecticut (1796) p. 127; we read *Pettis* as a suit to recover the unpaid duties, not to recover civil penalties.

Finally, we decline the dissent's suggestion that an 1810 federal case construing a federal statute constitutes part of our state's common law, and thus part of current state constitutional law, merely because it was included in our state court reporter. We thus conclude that *United States* v. *Allen,* 4 Day (Conn.) 474 (1810), could not form a basis for recognizing that, under Connecticut's common law before 1818, actions for civil penalties were tried to juries.

## II

The Capozziellos[11] contend that, under the doctrine of res judicata, the commissioner's prosecution of CBW in the 1986 action precludes the action against the Capozziellos in Docket No. 14437. We disagree.

"[C]laim preclusion [or res judicata] prevents a litigant from reasserting a claim that has already been decided on the merits. . . . Under claim preclusion analysis, a claim—that is, a cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . Moreover, claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made." (Citations omitted; internal quotation marks omitted.) *Scalzo* v. *Danbury,* 224 Conn. 124, 127–28, 617 A.2d 440 (1992); see *DeLaurentis* v. *New Haven,* 220 Conn. 225, 239, 597 A.2d 807 (1991); *Connecticut Water Co.* v. *Beausoleil,* 204 Conn. 38, 43, 526 A.2d 1329 (1987). "The doctrine of res judicata [applies] . . . as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction"; *Wade's Dairy, Inc.* v. *Fairfield,* 181 Conn. 556, 559, 436 A.2d 24 (1980); and promotes judicial economy by preventing relitigation of issues or claims previously resolved. *Scalzo* v. *Danbury,* supra, 127; *Carothers* v. *Capozziello,* 215 Conn. 82, 94, 574 A.2d 1268 (1990).

The parties' disagreement concerning the application of the doctrine of res judicata in this case focuses prin-

[11] Although both the Capozziellos and CBW join this claim, we consider only the Capozziellos to have raised it because CBW, which was not a defendant in Docket No. 14437, would have no standing to assert a res judicata defense against the prosecution of that action.

cipally on two elements of that doctrine, both of which must be satisfied if the Capozziellos are to prevail on the defense. The Capozziellos contend, first, that the commissioner's 1986 action against CBW alleged the same claims as those asserted against the Capozziellos in Docket No. 14437 and, second, that the Capozziellos are in privity with CBW for the purpose of res judicata analysis. The commissioner contends, to the contrary, that res judicata does not bar the prosecution of Docket No. 14437 because: (1) the conduct that gave rise to that action occurred after both the 1986 order and the effective dates of new statutes on which the complaint was predicated; and (2) the Capozziellos were not a party to the previous action.[12]

## A

We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. " ' "[T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the

---

[12] Citing *Local 1219* v. *Connecticut Labor Relations Board,* 171 Conn. 342, 370 A.2d 952 (1976), the commissioner also asserts that the doctrine of res judicata applies differently to regulatory agencies' actions than in other contexts. *Local 1219* does not, however, support this contention. There, we held that "res judicata does not necessarily apply to administrative agencies *where the situation is virtually altered between the time of the first judgment or order and the time of the second."* (Emphasis added.) Id., 356. Although we stated that rule in terms of administrative agencies in *Local 1219* because of the facts of that case, the rule that res judicata may not apply when there has been a significant change in circumstances between the time of the first action and the time of the second is generally applicable. Accordingly, contrary to the commissioner's assertion, we did not intend in *Local 1219* to shield administrative agencies from application of the doctrine of res judicata if such application is otherwise appropriate. The commissioner has not argued that such a significant change in circumstances has occurred.

action arose. What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . ." ' " *Orselet* v. *DeMatteo,* 206 Conn. 542, 545–46, 539 A.2d 95 (1988); see *Duhaime* v. *American Reserve Life Ins. Co.,* 200 Conn. 360, 364–65, 511 A.2d 333 (1986); see also *Nevada* v. *United States,* 463 U.S. 110, 130–31 n.12, 103 S. Ct. 2906, 77 L. Ed. 2d 509 (1983); 1 Restatement (Second), Judgments § 24 (1982). In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action.[13] See, e.g., *Nevada* v. *United States,* supra, 131–34; *Capraro* v. *Tilcon Gammino, Inc.,* 751 F.2d 56, 57 (1st Cir. 1985).

The complaint in Docket No. 14437 alleges that, since June 1, 1986, and continuing into the future, the Capozziellos have operated and will operate a solid waste facility illegally at the Bridgeport site without obtaining a permit, as is required by General Statutes § 22a-208a, in violation of Public Acts 1989, No. 89-386. Moreover, the complaint alleges that the Capozziellos have violated General Statutes § 22a-430 by generating leachate, without a permit, thereby degrading the groundwater beneath the Bridgeport site. Finally, the complaint alleges that the Capozziellos' conduct has resulted or will result in unreasonable pollution, impairment or destruction of the natural resources of the state in violation of § 22a-16.

In the final order that issued at the conclusion of the 1986 administrative action, the commissioner stated

---

[13] The pleadings in the 1986 action, however, are not part of the record on appeal, and, therefore, we conduct our inquiry without them.

the finding that CBW had operated a solid waste transfer/resource recovery facility without the required permits. In light of this finding, the commissioner directed CBW to discontinue its operation of an unpermitted solid waste transfer/resource recovery facility by: (1) discontinuing waste deposit at the Bridgeport site within thirty days of the order; (2) retaining an exterminator and beginning a waste removal and vector extermination program within thirty days of the order; and (3) confirming with the commissioner within sixty days of the order that the waste removal and vector extermination program has been completed.

Comparison of the 1986 action and the present action persuades us that the claims asserted therein are the same for the purpose of our res judicata analysis. Both focus on the operation of a solid waste facility at the Bridgeport site and the collateral environmental consequences of that operation. The claims, therefore, are related in "origin" and "space." *Orselet* v. *DeMatteo,* supra, 546. Additionally, the commissioner's primary "motivation"; id.; in bringing these actions is the same in both cases: to effect a cessation of environmentally unsound and illegal dumping of debris at the Bridgeport site.

Our conclusion is not weakened by the fact that the present action relates to alleged misconduct committed after the final order in the 1986 action had been issued. Indeed, the commissioner's 1986 order sought to regulate future conduct, rendering the post-June 1, 1986 conduct, which the second action purports to reach, a subject of that order. To the extent metaphysically possible, therefore, the commissioner made a finding in the 1986 action that post-June 1, 1986 violations would occur and ordered appropriate relief. Accordingly, we conclude, on the basis of the required pragmatic inquiry, that the claims in the present action and the 1986 action are the same.

Indeed, the commissioner does not argue that the substantive nature of the claims in the two cases is different for res judicata purposes. Rather, the commissioner contends that res judicata is not a bar to the claims in Docket No. 14437 because the complaint in that case charged the Capozziellos with violating versions of statutes that had not been enacted as of June 1, 1986. This argument fails for two principal reasons.

First, the two public acts relied upon by the commissioner, Public Acts 1989, Nos. 89-270 and 89-386, became effective October 1, 1989, and July 1, 1989, respectively. Accordingly, in charging conduct dating from June 1, 1986, in the first, fourth and fifth counts of the complaint in Docket No. 14437, the commissioner relied on the preamendment versions of the relevant statutes.

Second, the 1989 public acts cited by the commissioner did not make such substantive changes in the law that a claim asserted under them may, for that reason alone, be considered different from a claim asserted under the preamendment version. For example, the relevant change effected by Public Acts 1989, No. 89-270, was an increase in the maximum daily fine for violations of General Statutes §§ 22a-226 and 22a-438 from $10,000 to $25,000. As we have held, however, the preclusive effect of the doctrine of res judicata is triggered even if "the plaintiff is prepared in the second action . . . [t]o seek remedies or forms of relief not demanded in the first action." (Internal quotation marks omitted.) *Orselet* v. *DeMatteo,* supra, 546.

Additionally, the primary effect of Public Acts 1989, No. 89-386 was to change the statutory definitions of certain terms. After reviewing these changes, we conclude that they did not change the scope of the statutes in any way relevant to the commissioner's charges

against the Capozziellos.[14] Accordingly, we hold that the claims in Docket No. 14437 and in the 1986 action are the same for the purpose of the doctrine of res judicata.

B

We now turn to the question whether the Capozziellos, the defendants in Docket No. 14437 and corporate officers of CBW, are in privity with CBW, the sole defendant in the 1986 action, for the purpose of our res judicata analysis. "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding."[15]

---

[14] For example, the third count of the complaint in Docket No. 14437 is predicated on Public Acts 1989, No. 89-386, § 2, which amends General Statutes § 22a-208c to prohibit all persons from "receiv[ing], dispos[ing] of, or process[ing] solid waste or transport[ing] solid waste for disposal or processing at any solid waste facility . . . unless such facility . . . complies with the provisions of section 22a-208a of the general statutes . . . ." The commissioner's claim that this amendment creates a substantial change in the law is belied by the fact that, in count one of the complaint, the commissioner charged that, from June 1, 1986, to June 30, 1989, before the amendment became effective, the defendants had violated General Statutes § 22a-207 et seq. by, without a permit, "accept[ing] and process[ing] solid waste at 329 Central Avenue in Bridgeport, Connecticut by receiving the waste . . . [and] transferr[ing] the solid waste] to vehicles for removal elsewhere." Although the current version and the preamendment version may not be identical, we conclude that, for the purpose of the commissioner's claims against the Capozziellos, those versions are the same.

[15] This case would present an unusual application of the doctrine of res judicata insofar as the Capozziellos are attempting to prevent the commissioner from relitigating claims on which the commissioner was successful in the 1986 action. Although a party would generally not seek to relitigate a claim on which he or she has prevailed, such relitigation in this case would nonetheless benefit the commissioner because it might accomplish compliance with the applicable environmental requirements, whereas the previous judgment against CBW apparently did not accomplish this goal.

Moreover, we note that the primary purpose of the privity requirement—assurance that the party *against whom* the defense is asserted had an ade-

(Internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 304, 596 A.2d 414 (1991). Although "there is no bright line rule as to whether or not [corporate officers or] shareholders are in privity with their corporation for res judicata purposes"; *Amalgamated Sugar Co.* v. *NL Industries, Inc.,* 825 F.2d 634, 640 (2d Cir.), cert. denied, 484 U.S. 992, 108 S. Ct. 511, 98 L. Ed. 2d 511 (1987); the Restatement (Second) of Judgments provides useful guidance.

The Restatement (Second) of Judgments, § 59 asserts the general rule that "a judgment in an action to which a corporation is a party has no preclusive effects on a person who is an officer, director, stockholder, or member of a non-stock corporation . . . ." That general rule, however, is subject to an exception for closely held corporations: "If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action . . . against the corporation . . . is conclusive upon the [holder of ownership in it] as to issues determined therein [if,] in an action . . . against the corporation . . . the holder of its ownership . . . actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have opportunity to relitigate the issue . . . ." 2 Restatement (Second), Judgments § 59 (3) (a) (1982). Several other jurisdictions have employed this

---

quate opportunity to be heard in the first action—is not implicated here, because the Capozziellos are seeking the benefit of the privity requirement. In this case, however, because the commissioner contends that there is no privity between the Capozziellos and CBW, we must assure that the parties *who assert* the defense had an adequate opportunity to participate in the previous litigation. In a sense, therefore, the privity requirement may operate to protect the commissioner. Finally, we note that none of the parties has argued that we should abandon the privity requirement under the unique circumstances of this case.

rule.[16] See, e.g., *Capraro* v. *Tilcon Gammino, Inc.,* 751 F.2d 56, 59 (1st Cir. 1985); *In re Beck Industries, Inc.,* 725 F.2d 880, 886 (2d Cir. 1984); *Alaska Foods, Inc.* v. *Nichiro Gyogyo Kaisha, Ltd.,* 768 P.2d 117, 122 (Alaska 1989); *Jantzen* v. *Baker,* 131 Wis. 2d 507, 511, 388 N.W.2d 660 (1986).

It is well established that the party asserting the affirmative defense of res judicata bears the burden of establishing its applicability. In this case, the trial court found that "[t]he defendants have failed to offer any evidence to establish the allegations of said special defenses." In the absence of the appropriate factual predicate, we must reject the Capozziellos' claim that they were in privity with CBW. Because the Capozziellos thus have not satisfied each element of the doctrine of res judicata, their claim that the commissioner's prosecution of Docket No. 14437 is precluded fails.

### III

The Capozziellos[17] claim that the trial court improperly imposed liability on them, jointly and severally with CBW, for the penalty in Docket No. 14435, in which CBW was the sole defendant. We agree.

Although the Superior Court has general subject matter jurisdiction; see *In re Tyvonne M.,* 211 Conn. 151, 157, 558 A.2d 661 (1989); see also General Statutes § 51-164s; it may exercise jurisdiction over a person

[16] Other courts have adopted a more expansive definition of privity for closely held corporations, finding privity between a corporation and an individual if that individual is the sole corporate shareholder, has full ownership of the corporation, and exercises complete control of its affairs, without regard to the individual's involvement in the previous litigation to which the corporation was a party. See *In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir. 1983); *Hofsommer* v. *Hofsommer Excavating, Inc.,* 488 N.W.2d 380, 384 (N.D. 1992).

[17] Although all defendants join this claim, we consider only the Capozziellos to raise it because CBW would have no standing to challenge the trial court's imposition of penalties on the Capozziellos.

only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction. See, e.g., *In re Baby Girl B.*, 224 Conn. 263, 288–91, 618 A.2d 1 (1992) (court may acquire personal jurisdiction by waiver or consent); *Brunswick* v. *Inland Wetlands Commission*, 222 Conn. 541, 550–51, 610 A.2d 1260 (1992) (defect in process implicates personal jurisdiction). If a court lacks jurisdiction over a person, the court has no authority to award a judgment against that person.

In this case, the trial court assessed a total penalty of $868,950 against the defendants jointly and severally in the three cases. The court expressly identified $417,200 of that total as the penalty imposed in Docket No. 14435 for the defendants' violation of the 1986 order for 1192 days, at $350 per day.[18] Although CBW was the sole defendant in Docket No. 14435, the trial court justified its imposition of joint and several liability for the $417,200 penalty on CBW and the Capozziellos because of its finding that "all defendants are equally answerable and responsible to the Commissioner." Indeed, the judgment in each of the three cases states that "[t]he court . . . enters a single Judgment encompassing all three cases."[19]

The Capozziellos argue that the trial court lacked jurisdiction as to them in Docket No. 14435 because

[18] Because the trial court expressly assessed a separate penalty in each action, we reject the commissioner's contention that the defendants failed to preserve an adequate record for review of this claim on appeal because they did not move the trial court for an articulation on apportionment of the penalty.

[19] The commissioner moved for articulation of the trial court's basis for imposing civil penalties. In its denial of that motion, the trial court indicated that it had found the defendants jointly and severally liable for the total amount of penalties imposed in the three cases because "the three cases were consolidated" and "the court [had] assess[ed] all the evidence in the three consolidated cases together . . . ."

they were not parties to that action, which sought to enforce the 1986 administrative order issued against CBW. The commissioner contends, to the contrary, that the trial court properly imposed on the Capozziellos the penalty for violating the 1986 order because that penalty was part of a single judgment rendered after a consolidated trial of the three cases, in two of which the Capozziellos were defendants.

Although the commissioner is correct that the three cases were consolidated for trial, such consolidation does not authorize the trial court to render a judgment against persons who are nonparties and upon whom process was not served. The complaint in Docket No. 14435 names CBW alone as the defendant, and the misconduct that formed the primary basis of the charges and the penalty imposed was CBW's violation of the 1986 order, to which the Capozziellos were not parties. Accordingly, the trial court lacked jurisdiction over the Capozziellos to impose the $417,200 penalty in Docket No. 14435 on them, jointly and severally with CBW, and we reverse the trial court judgment in that case as to the Capozziellos.

IV

The defendants also claim that the trial court abused its discretion by imposing a penalty in Docket No. 14436 for 651 days of continuing violations of General Statutes § 22a-32. We are not persuaded.

The trial court found that the defendants had violated § 22a-32 by depositing debris in a wetland without a permit. The trial court imposed a $250 daily penalty for a period of 651 days for this violation, for a total of $162,750. The defendants do not dispute the daily amount of the penalty or the finding that they had illegally dumped debris in a wetland, but challenge only the number of days for which a penalty was imposed.

Section 22a-32 prohibits all "regulated activity [from] be[ing] conducted upon any wetland without a permit." Under General Statutes § 22a-38 (13), the term "regulated activity" includes the depositing of material in a wetland.[20] General Statutes § 22a-35 authorizes a maximum penalty of $1000 for each violation of § 22a-32 and states that "in the case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense." In light of these statutory definitions, the defendants' claim devolves into a contention that the act of leaving illegally deposited debris in a wetland does not constitute a continuing violation of the prohibition against the depositing of debris.

The plain language of §§ 22a-32 and 22a-38 (13) prohibits the depositing of debris in a wetland. Although § 22a-35 authorizes a penalty for each day of a "continuing violation," it is not clear from the statutory language whether a continuing violation of § 22a-32 consists solely of depositing debris in a wetland on consecutive days or whether it also may include depositing debris in a wetland and allowing it to remain there. Because the language of the relevant statutory provisions does not yield a clear answer to the question of what constitutes a continuing violation, we turn for guidance to the legislative policy that underlies these provisions. See *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 227, 602 A.2d 1019 (1992).

The legislature has expressed a strong public policy in favor of protecting and preserving the natural resources, and particularly the wetlands, of this state. "The inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the

---

[20] "Material" is defined as "any substance, solid or liquid, organic or inorganic, including, but not limited to . . . debris . . . ." General Statutes § 22a-38 (6).

state have been endowed. The wetlands and water-courses are an interrelated web of nature essential to an adequate supply of surface and underground water; to hydrological stability and control of flooding and erosion; to the recharging and purification of groundwater; and to the existence of many forms of animal, aquatic and plant life. . . . The preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state." General Statutes § 22a-36; see *Mario* v. *Fairfield,* 217 Conn. 164, 168, 585 A.2d 87 (1991); *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 559–60, 552 A.2d 796 (1989); see also General Statutes § 22a-1.

In light of this emphatic statement of the importance of protecting wetlands, we conclude that the legislature intended a broad definition of "continuing violation" and, accordingly, that that phrase, as used in § 22a-35, may include the illegal depositing of debris in a wetland as well as a subsequent period in which the illegally deposited debris remains in the wetland. Accordingly, the trial court did not abuse its discretion by assessing a penalty for the number of days of the illegal depositing of debris *and* for the number of days during which the debris subsequently remained at the site.[21]

---

[21] The defendants also suggest that the absence of an existing administrative order or judicial decision prohibiting the depositing and maintenance of debris at the Monroe site should have prevented the trial court from punishing that conduct. This argument is unpersuasive, however, because it equates legal conduct with conduct that an agency or a court has not previously found to be illegal and has not enjoined. Because the defendants' conduct that formed the basis of Docket No. 14436 was prohibited by statute at the time it occurred, the trial court properly punished the defendants for it.

The judgment in Docket No. 14435 is reversed as to Geno Capozziello and Russell Capozziello and that case is remanded to the trial court with direction to render judgment in favor of those defendants; the judgment in Docket No. 14436 is affirmed; and the judgment in Docket No. 14437 is affirmed.

In this opinion CALLAHAN, BORDEN and NORCOTT, Js., concurred.

BERDON, J., dissenting. The issue before us is not whether the Connecticut constitution requires a jury trial in an environmental enforcement action, as the majority contends; rather, the issue is whether the Connecticut constitution requires a jury trial to determine whether the defendants are liable for civil penalties for violations of the Solid Waste Management Act, General Statutes § 22a-207 et seq., and the Water Pollution Control Act, General Statutes § 22a-416 et seq. (acts). The penalties in Docket No. 14437 that are relevant to the jury issue were predicated on General Statutes §§ 22a-226 and 22a-438.[1]

This distinction is important—the defendants claim the right to a jury trial with regard to civil penalties only. They do not claim, of course, that the remedial aspects of the acts—namely, the remedies of temporary and permanent injunction to prevent, control or abate pollution—require a jury trial. These are purely equitable matters for which there is no constitutional right to a jury trial. *Dick* v. *Dick,* 167 Conn. 210, 220, 355 A.2d 110 (1974). Accordingly, a jury trial to determine the defendants' liability for civil penalties would not affect the state's ability to fulfill "its goal of preserving the environmental quality" as the majority seems to suggest.

---

[1] See footnote 2 of the majority opinion.

The state constitutional right to trial by jury,[2] similar to the cognate provision of the federal constitution,[3] provides that "[t]he right of trial by jury shall remain inviolate." Thus, under both constitutions "the right to a jury trial exists both in cases in which it existed at common law at the time of the adoption of the constitutional provision preserving it *and* in cases substantially similar." (Emphasis in original.) *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* 216 Conn. 40, 50, 578 A.2d 1054 (1990). Connecticut adopted its first formal constitution in 1818.

The defendants claim that an action to collect penalties under the acts is similar to an action in debt, which was accompanied by a right to trial by jury prior to 1818. The majority concedes that litigants were entitled to a jury trial for an action in debt at common law; 2 Z. Swift, A System of the Laws of the State of Connecticut (1796) p. 127 (System); but they argue that "[d]ebt is an action founded on contract, express or implied, in which the certainty of the sum, or duty appears, and in which the plaintiff is to recover the sum in numero, and not in damages." Id. Finding that the civil penalty was uncertain in this case, the majority concludes that "an environmental action like Docket No. 14437 cannot, consistently with Connecticut's common law history, be considered substantially similar to an action in debt, for which a state constitutional right to a jury trial would exist."

---

[2] The right of trial by jury was originally guaranteed by article first, § 21, of the Connecticut constitution of 1818 and is now guaranteed by article first, § 19, as amended by article fourth of the amendments to the Connecticut constitution of 1965, which provides in part: "The right of trial by jury shall remain inviolate."

[3] The seventh amendment to the United States constitution provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

Although the penalty provisions of the acts authorize the imposition of maximum monetary limits, which the state sought to impose in this case, the penalties are not in the nature of "damages." Accordingly, they are not characterized by the uncertainty that is absent from an action in debt. They are more like an obligation "in numero"—that is, "[t]o add up, count." Oxford Latin Dictionary (1982).

Indeed, under Connecticut common law prior to 1818, civil penalties could be sought in an action in debt. In the 1786 case *Pettis* v. *Dixon,* 1 Kirby (Conn.) 179 (1786), this court held that an action brought pursuant to a statute to collect a civil penalty for failure to pay a duty on importing goods into this state was an action in debt in which the litigant was entitled to a jury trial. The issue arose after the jury found in favor of the defendant and the plaintiff sought to return the jury for a second consideration.[4]

Furthermore, Chief Justice Swift stated in his 1796 treatise that the "old doctrine, that in debt, the plaintiff can recover only the precise sum he sues for, is exploded—and later decisions warrant the recovery of a less sum than sued for." Z. Swift, System, supra, p. 134.[5] This strongly suggests to me that the rule requiring a sum certain was not absolute. As Swift subsequently noted, an action for debt "cannot be sustained unless the demand be for a sum certain, *or for a pecu-*

---

[4] The court pointed out that the matter was "treated wholly as a civil action, and came up here by appeal, which it could not, had it been a criminal prosecution . . . ." *Pettis* v. *Dixon,* 1 Kirby (Conn.) 179, 180 (1786).

[5] In his 1822 treatise, Justice Swift gave the following explanation: "An idea was formerly entertained, that in an action of debt, the plaintiff could not prove and recover a less sum that he stated to be due: but it has since been otherwise determined, and there is no difference in this respect between debt and other actions: it is only necessary that the contract should be truly stated, so that there be no difference between the contract laid and the proof." 1 Z. Swift, Digest of the Laws of the State of Connecticut (1822) p. 572.

*niary demand which can be reduced to a certainty
. . . ."* (Emphasis added.) 1 Z. Swift, Digest of the
Laws of the State of Connecticut (1822) p. 572 (Digest).

Moreover, the United States Supreme Court's deci-
sion in *Tull* v. *United States,* 481 U.S. 412, 107 S. Ct.
1831, 95 L. Ed. 2d 365 (1987), is instructive. In *Tull,*
the court relied upon eighteenth century English com-
mon law, as did Chief Justice Swift in his 1796 and 1822
treatises,[6] holding that the defendant was entitled to
a jury trial to determine liability for civil penalties under
the Clean Water Act, 33 U.S.C. § 1251 et seq. Id., 425.
The court noted that "[p]rior to the enactment of the
Seventh Amendment, English courts had held that a
civil penalty suit was a particular species of an action
in debt that was within the jurisdiction of the courts
of law. See, e.g., *Atcheson* v. *Everitt,* 1 Cowper 382,
98 Eng. Rep. 1142 (K.B. 1776) (characterizing civil pen-
alty suit as a type of action in debt); *Calcraft* v. *Gibbs,*
5 T.R. 19, 101 Eng. Rep. 11 (K.B. 1792) (granting new
jury trial in an action in debt for a civil penalty)." Id.,
418. The court's holding is consistent with Chief Jus-
tice Swift's statement that "[d]ebt will lie on certain
statutes, at the suit of the party injured, or of a com-
mon informer." 1 Z. Swift, Digest, supra, p. 574.

Furthermore, without placing this claim within the
fine nuances of the common law writ for debt, eigh-
teenth century common law provided for a jury trial
for such civil penalties. "A civil penalty was a type of
remedy at common law that could only be enforced in
courts of law. Remedies intended to punish culpable
individuals, as opposed to those intended simply to
extract compensation or restore the status quo, were
issued by courts of law, not courts of equity. . . .
Because the nature of the relief authorized by [the stat-
ute] was traditionally available only in a court of law

---

[6] See also *State* v. *Geisler,* 222 Conn. 672, 687, 610 A.2d 1225 (1992).

[the defendant] is entitled to a jury trial on demand."
*Tull* v. *United States,* supra, 422–23. There is strong
indication that this was also the common law in Con-
necticut before 1818. In *United States* v. *Allen,* 4 Day
(Conn.) 474 (1810), the government brought an action
to recover a penalty for the defendant's failure to obtain
a permit, as required by the Embargo Act, before leav-
ing the port of New Haven. The defendant was entitled
to a jury trial. Although *Allen* was decided by the Cir-
cuit Court of the United States for the District of Con-
necticut, the opinion was included by the judges of the
Superior Court in Day's Reports, our state court
reporter at the time. The case can therefore be pre-
sumed to have state precedential value.

Thus, I conclude that the common law prior to the
adoption of our state constitution in 1818 establishes
the defendants' right to trial by jury to determine
whether they are liable for a civil penalty.

Sections 22a-226 and 22a-438 also implicitly provide
that the trial court's function is limited to determin-
ing the amount of the fine and not the defendant's lia-
bility for the penalty. Section 22a-226 specifically
provides that the amount of the penalty is "to be fixed
by the court." Likewise, § 22a-438 provides that the
court must consider various factors to determine the
amount of the penalty. If the legislature had intended
for the court to determine liability as well as the amount
of the penalty, it would have specifically stated so. "An
enumeration of powers in a statute is uniformly held
to forbid the things not enumerated." *State ex rel.
Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792
(1957); *Capalbo* v. *Planning & Zoning Board of Appeals,*
208 Conn. 480, 491, 547 A.2d 528 (1988).

Finally, the majority justifies its conclusion that the
defendants are not entitled to a jury trial on the ground
that the state's primary goal was to obtain equitable

relief (temporary and permanent injunctions) and not civil penalties. Even assuming this to be true—although it seems questionable because the state sought the maximum fines of $25,000 for each offense and $25,000 for each day that the pollution remained—it still should not deprive the defendants of a jury trial. Whether the state's main objective was to obtain equitable relief is of no consequence in determining whether the defendants in this case were entitled to a jury trial.

The majority's reliance on *Texaco, Inc.* v. *Golart,* 206 Conn. 454, 538 A.2d 1017 (1988), is misplaced. Only when the legal facts are *incidental* to an action that is essentially equitable can the litigant be denied a jury trial to resolve the legal issues. "When legal and equitable issues are combined in a single action, whether the right to a jury trial attaches depends upon the relative importance of the two types of claims. Where incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers. *Doris* v. *McFarland,* 113 Conn. 594, 608, 156 Atl. 52 [1931]." (Internal quotation marks omitted.) Id., 459.

Liability for civil penalties is not an "incidental [issue] of fact." (Internal quotation marks omitted.) Id. The legislature established a separate cause of action for civil penalties when it codified them in their own subsection of § 22a-226; see General Statutes § 22a-226 (a); and devoted all of § 22a-438 to them. When a cause of action can stand alone, as in the present case in which the commissioner was free to bring an action for civil penalties only, such issues are not incidental and the litigant is entitled to a jury trial. As Professor Stephenson explains: "In many situations a plaintiff has two causes of action, one legal and one equitable, arising from the same transaction. Such situations are to be distinguished from those in which the plaintiff seeks to assert a right which is essentially equitable but

also claims damages either to supplement and complete the equitable relief or as a substitute for equitable relief. Such situations present cases properly cognizable in equity only. The situation with which we are here concerned is one in which the plaintiff has an action at law which could *stand alone* and an action in equity which could stand alone but both arose from the same transaction and so present one or more common issues of facts.

"It is clear that joinder of both actions in one suit under the merged procedure will not deprive the parties of their right to jury trial of the legal cause of action but there is no such right as to the cause of action in equity." 2 E. Stephenson, Connecticut Civil Procedure (1971) § 176 (a), pp. 702–703.

Our legislature recognized this constitutional requirement when it adopted General Statutes § 52-219, which provides: "Whenever an action brought to recover damages and also to obtain equitable relief has been placed upon the docket as a jury case, the determination of the equitable issues raised by the pleadings shall not prevent a jury trial of the claim for damages, unless both parties agree in writing to waive a jury, or unless the determination of the equitable issues has necessarily adjudicated all the facts upon which the claim for damages rests." See also Practice Book § 306.[7] Any other method would be contrary to the right to a jury trial as guaranteed by our state constitution.

---

[7] Practice Book § 306 provides: "The court shall decide all issues of law and all questions of law arising in the trial of any issue of fact; and, in committing the cause to the jury, shall direct them to find accordingly, and shall submit all questions of fact to the jury, with such observations on the evidence, for their information, as it thinks proper, without any direction how they shall find the facts. After the cause has been committed to the jury, no pleas, arguments or evidence shall be received before the verdict is returned into court and recorded."

Accordingly, I would reverse the judgment on the fines in Docket No. 14437 and remand the case to the trial court to be placed on the jury docket for a determination of whether the defendants are liable for civil penalties. If the jury determines that civil penalties should be assessed, the amount of the penalties is to be determined by the trial court. See *Tull* v. *United States,* supra, 427. I agree with the remainder of the majority opinion.

