[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF MOTION TO STRIKE FROM JURY DOCKET
In this case the state seeks to recover what it alleges are overpayments made by the Department of Income Maintenance to the defendant, Dr. Moorad. The payments were made pursuant to the Medicaid program for services the doctor claimed he rendered to patients previously determined to be eligible by the state agency for such services. The plaintiff claims the defendant failed to establish his entitlement to the payments when he was audited.
The state has moved to strike the case from the jury list. The state's memorandum of law refers to the constitutional and statutory provisions which govern the determination of this issue. Article I, Section 19 of the state constitution provides that "the right to trial by jury shall remain inviolate." As the state correctly notes, however, our courts have consistently held there is no right to a jury trial in any action not so triable when the constitution was adopted, Swanson v. Boschen, 143 Conn. 159,165 (1956), U.S. Fidelity Guarantee Co. v. Spring Brook Dairy, 135 Conn. 294, 297 (1949); Skinner v. Angliker, 15 Conn. App. 297, 302 (1988).
The constitutional right to a jury trial was expanded somewhat by the provisions of 52-215 of the general statutes. That statute among other things says that
 "the following-named classes of cases shall be entered in the docket as jury cases . . . civil actions involving such an issue of fact as, CT Page 2526 prior to January 1, 1980, would not present a question properly cognizable in equity . . . . All cases not entered in the docket as jury cases under the foregoing provisions . . . . and all other special statutory proceedings which prior to January 1, 1880, were not triable by jury, shall be entered on the docket as court cases . . . ."
The state argues that the action now before the court does not fall within the constitutional guarantee nor is it permitted as a jury trial by the statute. The action "arises out" of the state's participation in the Medicaid program which came into existence with the federal social security act of 1935; the state did not elect to participate in the program until 1965 with the enactment of 17-134a of the general statutes. Due to these critical dates "matters arising from the state's participation in the Medicaid program are not triable to a jury as a matter of constitutional right." Also, although this action is not one in equity the issues presented could not possibly have been raised prior to January 1, 1880 so the statute cannot provide a basis for a jury claim.
Although its black letter legal argument seems to belie its concession, the state does concede that the constitutional and statutory right to a jury trial is not determined by whether an action is statutory. Unless this were so the legislature "by the process of giving legislative sanction to common-law causes of action, could in the course of time obviate the guarantee of jury trial completely." Swanson v. Boschen, 143 Conn. 159, 164
(1950). The question is not whether the action is statutory but whether the action created by the statute or statutory scheme is "substantially of the same nature or is such an issue as prior to 1818 would have been triable to jury", Skinner v. Angliker, 211 Conn. 370, 375 (1989).
If the action sounds in contract or debt then the defendant would have a right to a jury trial. The state argues the action is neither but rather the function of "the regulatory scheme imposed on the statute by federal law as a condition to the state's election to participate in the Medicaid program and to do so in accordance with controlling federal law." The state's brief then proceeds to set forth the nature of the regulatory scheme CT Page 2527 emphasizing the obligations of the state under federal regulations — audits, the obligation to bring actions for overpayment to the providers etc. The state is required to make timely payment of claims to providers such as claims to providers such as doctors. The state is required to obtain the provider doctor's signature to a so-called provider agreement but this agreement merely requires record keeping and an obligation to make records available to state and federal authorities. The agreement is devoid of any provision as regards payment so it does not constitute a contract between the state and the provider, here the defendant doctor. The state's brief also notes the defendant's participation as a provider of medical services was voluntary on his part. It is no doubt true, however, that once a doctor is given "provider status" he may submit his claims for payment and he will be paid in a timely fashion. The latter aspect of the regulatory scheme thus underlines the importance of the post payment audit scheme and the record keeping requirements. If there has been overpayment, after payment the state can take action pursuant to 17-83k(2) and 17-83k(b) which provide the basis on which the state has brought this action. Under 17-83k(2) a provider may not "accept payment for goods or services performed which exceeds either the amounts due for goods or services performed, or the amount authorized by law for the cost of such goods and services." The state here seeks recovery for "overpayments" to the defendant doctor; he didn't document the medical necessity for the services he claims he rendered nor did his records support the need for medication dispensed or document all the services he claims he provided, see paragraphs 8 and 10 of the first count of the plaintiff's complaint. All of this sounds a lot like an action by the state to recover on a debt it claims the defendant owes the state for overpayments. If it can be characterized as such the defendant would have a right to a jury trial.
The state spends much time and energy in its brief arguing that no contractual relationship existed between it and the defendant and no jury claim is thus warranted because the action really doesn't lie in contract. However, it does not address the factual issues insofar as they warrant defining this action as one sounding in debt.
The state makes abroad argument that this action does CT Page 2528 not sound in either contract or debt because it really is the "function" of a larger federal regulatory scheme. This can't be a controlling factor. In Swanson v. Boschen,143 Conn. 159, 160 the plaintiffs were held to be entitled to a jury trial in an action pursuant to a federal statute to recover money paid as rent to the defendant in excess of the amount fixed by the area rent director under then61 Stat. 199, as amended, 50 U.S.C. App. 1895 (Sup 4, 1951). This statute was a broad federal effort to stabilize rents but our court held that although the right of action was created by federal statute it was in essence founded on debt, cf Curtis v. Loether, 415 U.S. 189, 193-197 (1974) jury trial allowed under 812 of Civil Rights Act of 1968 for damages. Commissioner v. Conn. Building Wrecking Co.,227 Conn. 175, 182-186 (1993) is as important here as much for what it says as for what it doesn't say. There too the defendants' claimed a right to a jury trial. The state brought an action seeking injunctive relief and civil penalties for alleged violations of the solid waste management and water pollution control statutes. These statutes are also part and parcel of a broad regulatory scheme. The court declaring there was no right to a jury trial did not discuss this regulatory scheme or the novelty of the state intervening in the area of waste management and environmental control. The court simply said that the civil penalties provided under the act didn't meet the common law definition of debt. If they had met that definition, the defendants would have been entitled to a jury trial.
The court noted that under 22a-226 of the statute, the judge is given broad discretion as to the amount of any fine; the complaint requested a specified amount but that was only the maximum penalty under the statute. The commissioner was in effect requesting an unliquidated sum from the defendant; . . ." the penalty requested in that complaint was not certain in the sense that it was tied to a contractual obligation or debt" id. at page 184 emphasis added). Shortly before this comment court said "A common law action in debt lies where there [is] due a sum certain or capable of reduction to a certainty." That certainly appears to be the case here; the state is suing for a specific sum alleging it represents an overpayment of government monies to the defendant. That sounds like an action in debt and the fact that the state is bringing the CT Page 2529 action doesn't change that characterization. No authority has been cited to the court to indicate the state could not sue on a contract or for a debt at common law.
The state concludes its argument by pointing to a line of authority which bars a jury trial in a certain type of case that has been brought over the years by the state. As the state's brief correctly notes in actions where . . ." the state has sought payment for costs of institutional care and recovery of public assistance benefits from recipients of and, the courts of the state have uniformly held that there is no constitutional or statutory right to a jury trial.
The common thread running through these cases . . . is that actions brought by the state in furtherance of its governmental functions in the area of public aid were unknown to the common law and are not cognizable as jury matters" (page 7 of plaintiff's brief). Numerous superior court opinions are cited such as State v. Harinstein, Docket No. 218332, Sup. Ct. Hartford, 12/13/73, State v. Kazemekas, Docket No. 08493, Sup. Ct. Waterbury, 8/29/88); some of the earlier cases these opinions rely on are Windham Community Memorial Hospital v. Town of Windham,32 Conn. Sup. 271 (1976), State of Connecticut v. Jasinski,15 Conn. Sup. 369 (1948). The theory of the latter case and all these cases seems to be that when the state gives aid to someone — for example, treatment in a state hospital — the burden which the state assumes is purely voluntary in response to humanitarian considerations. Thus, the state enters into no contract relation with an aid recipient and would have had no action at law to recover for such aid or support. Only the various reimbursement statutes gave the state the right to bring these actions so they are purely statutory and not based on the right to sue under a contract theory that was cognizable under the common law.
This action, however, is not against an aid recipient or his or her family but against the provider of such aid. Once the state assumes what may be a voluntary undertaking that does not ipso facto mean the state cannot enter into a contract relation or have a debt action against a provider of the aid. As the state and federal government increasingly intervene in areas of social and environmental activity such a notion would bar the right to a jury trial CT Page 2530 in an increasing class of cases. The state does not and cannot deny that if according to its understanding the state entered into an explicit contract with a doctor for delivery of services to an identifiable group of patients that there would be a right to a jury trial. This would be so even if the aid the doctor was to provide was aid the state would not have been required to deliver to the recipients. Why can't an action for overpayment regarding that aid not also be regarded as sounding in an old common law action on debt thus giving the defendant a right to a jury trial?
The motion to strike this action from the jury docket is denied.
Corradino, J.